**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No.: 1:17-cv-00474-KLM

LAWRENCE HENRY SMALLEN AND
LAURA ANNE SMALLEN REVOCABLE
LIVING TRUST, Individually and on Behalf
of All Others Similarly Situated,

        Plaintiff,
  v.

THE WESTERN UNION COMPANY,
HIKMET ERSEK, SCOTT T.
SCHEIRMAN, and RAJESH K.
AGRAWAL,

        Defendants.

Civil Action No.: 1:17-cv-00648-KMT

UA LOCAL 13 PENSION FUND, Individually
and on Behalf of All Others Similarly Situated,

        Plaintiff,
  v.

THE WESTERN UNION COMPANY,
HIKMET ERSEK, SCOTT T.
SCHEIRMAN, and RAJESH K.
AGRAWAL,

        Defendants.

**-***caption continued on following page-*

**MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION OF LAWRENCE HENRY SMALLEN AND LAURA ANNE SMALLEN REVOCABLE LIVING TRUST FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL, AND IN OPPOSITION TO COMPETING MOTIONS**

Civil Action No.: 1:17-cv-00809-KLM

MARTIN HERMAN, Individually and on
Behalf of All Others Similarly Situated,

                              Plaintiff,
        v.

THE WESTERN UNION COMPANY,
HIKMET ERSEK, SCOTT T.
SCHEIRMAN, and RAJESH K.
AGRAWAL,

                              Defendants.

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................1

II. THE SMALLEN TRUST POSSESSES THE LARGEST RECOVERABLE LOSS, AND THUS THE GREATEST FINANCIAL INTEREST, IN THE LITIGATION.....................2

III. THE SMALLEN TRUST IS TYPICAL AND ADEQUATE TO REPRESENT THE CLASS ...................................................................................................................................7

IV. THE PENSION FUND IS ATYPICAL AND INADEQUATE TO REPRESENT THE CLASS ...................................................................................................................................8

V. THE SMALLEN TRUST'S SELECTION OF COUNSEL SHOULD BE APPROVED.10

CONCLUSION............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baby Neal v. Casey*,
    43 F.3d 48 (3d Cir. 1994)..................................................................................................7

*Beck v. Maximus, Inc.*,
    457 F.3d 291 (3d Cir. 2006)............................................................................................7, 8

*Bensley v. FalconStor Software, Inc.*,
    277 F.R.D. 231 (E.D.N.Y. 2011) .......................................................................................9

*Cavanaugh*,
    306 F.3d at 732 ...............................................................................................................7, 8

*Dannis v. USN Communs., Inc.*,
    189 F.R.D. 391 (N.D. Ill. 1999).........................................................................................7

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005).............................................................................................2, 4, 5, 7

*Eichenholtz v. Verifone Holdings, Inc.*,
    2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ..................................................................5

*Foster v. Maxwell Techs., Inc.*,
    2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013) ................................................5

*In re Bard Assocs., Inc.*,
    2009 U.S. App. LEXIS 26289 (10th Cir. Dec. 2, 2009)...................................................1

*In re Comverse Tech., Inc. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007)...............................................3, 4

*In re Enzymotec Ltd. Sec. Litig.*,
    2015 WL 91835 (D.N.J. Mar. 3, 2015)..............................................................................9

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
    2004 U.S. Dist. LEXIS 27043 (N.D. Ohio May 12, 2004)................................................3

*In re Molycorp, Inc. Sec. Litig.*,
    2012 U.S. Dist. LEXIS 89191 (D. Colo. May 29, 2012).........................................1, 7, 8

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp.2d 286 (E.D.N.Y. 1998) ....................................................................................3

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    225 F.R.D. 508 (E.D. Pa. 2004) ......................................................................................... 1, 3

*Kux-Kardos v. VimpelCom, Ltd.*,
    151 F.Supp.3d 471 ................................................................................................................ 4

*Lax v. First Merchs. Acceptance Corp.*,
    1997 U.S. Dist. LEXIS 11866 .............................................................................................. 3

*Mulligan v. Impax Labs., Inc.*,
    2013 US. Dist. LEXIS 93119 (N.D. Cal. July 2, 2013) ........................................................ 5

*Schueneman v. Arena Pharms., Inc.*,
    2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011) ...................................................... 5

*Takara Trust v. Molex, Inc.*,
    229 F.R.D. 577 (N.D. Ill. 2005) ............................................................................................ 3

*Wolfe v. Aspenbio Pharma, Inc.*,
    275 F.R.D. 625 (D. Colo. 2011) .................................................................................... 3, 7, 8

## **Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ............................................................................................ *passim*

## **Rules**

Federal Rules of Civil Procedure Rule 23 ............................................................................... 1, 7, 8

Movant Lawrence Henry Smallen and Laura Anne Smallen Revocable Living Trust ("the Smallen Trust") submits this Memorandum of Law in further support of its motion for consolidation of the above-captioned related actions, appointment as Lead Plaintiff, and approval of its selection of counsel, and in opposition to competing motions.

## I.   PRELIMINARY STATEMENT

This is a class action securities fraud lawsuit against The Western Union Company ("Western Union") and certain Western Union officers. As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed. The Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (the "PSLRA"), governs that process and, pursuant to the PSLRA, the Court should appoint as lead plaintiff the movant or movants with the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Bard Assocs., Inc.*, 2009 U.S. App. LEXIS 26289, at *6 (10th Cir. Dec. 2, 2009) ("The 'most capable' plaintiff—and hence the lead plaintiff—is the one who has the greatest financial stake in the outcome of the case, ***so long as*** he meets the requirements of Rule 23." (emphasis in original)); *In re Molycorp, Inc. Sec. Litig.*, 2012 U.S. Dist. LEXIS 89191, at *5 (D. Colo. May 29, 2012).

Here, the movant with the greatest financial interest in the subject matter of ***this*** litigation is the Smallen Trust, with losses of approximately $10,771 in connection with its purchases of Western Union securities. *See*, *e.g.*, *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (finding the amount of the financial loss "the most significant factor in determining financial interest). One competing movant, UA Local 13 Pension Fund (the "Pension Fund"), alleges a loss of $175,900 in connection with its purchases of Western Union securities.

1

(Dkt. No. 17.)[1]  In its initial complaint (the "Pension Fund Complaint")[2], the Pension Fund alleges that its losses were incurred solely as a result of a drop in Western Union's common stock price *more than four and a half years before the end of the Class Period*, on October 31, 2012, caused by "partial corrective disclosures" on a single date, October 30, 2012 (Pension Fund Complaint at ¶¶ 51-52).  However, a securities class action on behalf of Western Union shareholders who suffered losses caused by the corrective disclosures of October 30, 2012 was previously filed on December 10, 2013—over three years before the filing of the Pension Fund Complaint—by a plaintiff represented by the Pension Fund's counsel, Robbins Geller Rudman & Dowd LLP.[3]  *The Pension Fund cannot in this litigation recover losses caused by corrective disclosures that were the subject of a previous action.*  Because the October 30, 2012 corrective disclosures are the sole alleged cause of the Pension Fund's alleged losses, under the loss causation methodology mandated by the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 338 (2005), the Pension Fund has in fact suffered *no recoverable losses* in connection with the subject matter of this litigation, and thus has no financial interest in this litigation whatsoever.

## II. THE SMALLEN TRUST POSSESSES THE LARGEST RECOVERABLE LOSS, AND THUS THE GREATEST FINANCIAL INTEREST, IN THE LITIGATION

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief

---

[1] Unless otherwise specified, all docket citations herein are to the docket in *Lawrence Henry Smallen and Laura Anne Smallen Revocable Living Trust v. The Western Union Company et al.*, 1:17-cv-00648-KMT.

[2] (*UA Local Pension Fund v. The Western Union Company et al.*, 1:17-cv-00648-KMT (the "Pension Fund Action"), Dkt. No. 3.

[3] The earlier-filed action, *City of Taylor Police and Fire Retirement System v. The Western Union Company et al.*, 1:13-cv-03325-MSK-MJW (the "City of Taylor Action"), was ultimately dismissed with prejudice after a confidential witness was found "not [to] have firsthand knowledge of events at Western Union during calendar year 2012."  (City of Taylor Action, Dkt. No. 115.)

2

sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest" (*In re Goodyear Tire & Rubber Co. Sec. Litig.*, 2004 U.S. Dist. LEXIS 27043, at *16 (N.D. Ohio May 12, 2004)), courts around the country recognize that the amount of financial loss is the most significant factor to be considered.  *See*, *e.g.*, *Vicuron Pharms.*, 225 F.R.D. at 511 (finding the amount of the financial loss "the most significant" factor); *In re Comverse Tech., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *8 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("most courts simply determine which potential lead plaintiff has suffered the greatest total losses.").

Second to the amount of the amount of the financial loss, courts consider the number of shares purchased during a class period, the number of net shares purchased during a class period, and the total net funds expended during a class period in connection with the purchases.  *See Lax v. First Merchs. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *17 (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered);[4] *Wolfe v. Aspenbio Pharma, Inc.*, 275 F.R.D. 625, 627 n.4 (D. Colo. 2011) (noting use of four-factor financial interest analysis set forth in *Lax*).

---

[4] *See also In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998).  *Accord Comverse*, 2007 U.S. Dist. LEXIS 14878, at *22-*25.

Under each of the above analyses, the Smallen Trust possesses the largest financial interest in the litigation. The following chart compares the Smallen Trust to the two other movants that filed motions for appointment as lead plaintiff:

| Movant | Shares Retained | Recoverable Loss |
|---|---|---|
| Lawrence Henry Smallen and Laura Anne Smallen Revocable Living Trust | 5,000 | $10,771 |
| Martin Herman | 200 | $331 |
| UA Local 13 Pension Fund | 0 | $0 |

The Smallen Trust plainly has the largest financial interest in the litigation, whether considered in terms of net loss or in terms of net shares purchased (*i.e.*, shares retained). The Smallen Trust's net loss of $10,771 is **more than $10,000 greater** than the loss suffered by Martin Herman ("Herman"), the only other movant to have incurred a recoverable loss in connection with purchases of Western Union securities. Likewise, the Smallen Trust retained 5,000 shares of Western Union stock—4,800 more than Herman, the only other movant to have retained any Western Union shares.

Although the Pension Fund alleges that it has suffered losses of approximately $176,016 in connection with its purchases of Western Union securities, the Pension Fund has in fact suffered no recoverable loss, and thus has no financial interest, in ***this*** litigation. As the Supreme Court unambiguously stated in *Dura*, if "the purchaser sells the shares . . . before the relevant truth beings to leak out, the misrepresentation will not have led to any loss." 544 U.S. at 342. *See also Comverse*, 2007 U.S. Dist. LEXIS 14878, at *13 ("[I]t is clear that under *Dura* and its progeny, any losses . . . incurred before Comverse's misconduct was ever disclosed to the public are not recoverable, because those losses cannot proximately be linked to the misconduct at issue in this litigation."); *Kux-Kardos v. VimpelCom, Ltd.*, 151 F.Supp.3d 471, 476 ("[I]n evaluating financial loss, courts must consider only those losses proximately caused by the defendant's

misrepresentations or other fraudulent conduct."); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *3 (N.D. Cal. Aug. 22, 2008) ("loss causation can only be demonstrated with respect to shares retained as of the date of the corrective disclosure"); *Mulligan v. Impax Labs., Inc.*, 2013 US. Dist. LEXIS 93119, at *16-*17 (N.D. Cal. July 2, 2013) ("Where a plaintiff sustained losses during a class period, but these losses stem from stocks sold before the alleged fraud was revealed, these losses would generally not be traceable to the fraud, but instead to ordinary market forces."); *Foster v. Maxwell Techs., Inc.*, 2013 U.S. Dist. LEXIS 154538, at *10 (S.D. Cal. Oct. 24, 2013) ("The misrepresentation does not lead to a loss if the purchaser sells the shares before the truth is revealed."); *Schueneman v. Arena Pharms., Inc.*, 2011 U.S. Dist. LEXIS 87373, at *3 (S.D. Cal. Aug. 8, 2011) ("For the purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed."). In other words, under *Dura*, money lost before the fraud was allegedly revealed may not be included in calculating financial interest, because such losses have nothing to do with the alleged fraud, and are not legally recoverable.

Here, the Pension Fund held Western Union securities at the time of only one set of corrective disclosures, on October 30, 2012 (Pension Fund Complaint at ¶¶ 51, 52), and subsequently sold all of its Western Union securities by February 22, 2013 (Dkt. No. 19-3), ***more than three and a half years before the end of the Class Period alleged in these Actions***, on January 19, 2017. Thus, at the time of the corrective disclosures of January 19, 2017—alleged in the Pension Fund Complaint as well as in the complaints in each of the other two above-captioned related actions (*see* Dkt. No. 1 at ¶¶ 35-37; Pension Fund Action, Dkt. No. 3 at ¶¶ 81-84; *Herman v. The Western Union Company et al.*, 1:17-cv-00809-KLM (the "Herman Action"), Dkt. No. 3 at ¶¶ 37-42)—the Pension fund held *zero* Western Union securities. As such, the *only* basis for the

Pension Fund's alleged loss is the stock drop that occurred on October 31, 2012, as a result of the corrective disclosures of October 30, 2012.

Those disclosures, however, were the subject of a previous securities class action. On December 10, 2013, a securities class action was filed against Western Union and certain of its officers, asserting violations of the federal securities laws. (City of Taylor Action, Dkt. No. 1.) On February 10, 2014, the Pension Fund filed a motion seeking appointment as Lead Plaintiff. (City of Taylor Action, Dkt. No. 35.) On September 26, 2014, the court instead appointed SEB Asset Management S.A. and SEB Investment Management AB (collectively, "SEB") as Lead Plaintiff for the class. (City of Taylor Action, Dkt. No. 60.) On October 27, 2014, SEB filed a Consolidated Amended Complaint, alleging a class period of February 7, 2012 through October 30, 2012, both dates inclusive. (City of Taylor Action, Dkt. No. 68 at ¶ 1.) The Consolidated Amended Complaint alleged loss causation based solely on the same October 30, 2012 corrective disclosures alleged by the Pension Fund in its complaint in the instant litigation. (*Id.* at ¶¶ 134-151.)

*The Pension Fund may not recover in this litigation its losses incurred as a result of the October 30, 2012 corrective disclosures because those disclosures were the subject of a previous securities class action against Western Union.* Significantly, the Pension Fund Complaint is the only complaint in the related actions to allege losses caused by the October 31, 2012 corrective disclosures, in a transparent attempt by the Pension Fund to relitigate discarded allegations and obtain a second bite of the proverbial apple. After trying and failing to secure a leadership role in the previous class action against Western Union, the Pension Fund may not shoehorn previously litigated claims into this action solely for the purpose of inflating its losses and securing appointment as Lead Plaintiff.

6

Because the Pension Fund's only losses incurred in connection with its purchases of Western Union securities were the subject of a previous class action, the Pension Fund may not seek to recover those losses in this action. Under the methodology mandated by *Dura* and its progeny, the Pension Fund thus has no financial interest whatsoever in the subject of ***this*** litigation, and accordingly, its motion for appointment as lead plaintiff should be denied.

## III. THE SMALLEN TRUST IS TYPICAL AND ADEQUATE TO REPRESENT THE CLASS

Once a court identifies the movant with the largest financial interest—here, the Smallen Trust—that movant is the presumptively "most adequate plaintiff" if the movant also satisfied the adequacy and typicality requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Molycorp*, 2012 U.S. Dist. LEXIS 89191, at *5; *Cavanaugh*, 306 F.3d at 732. As demonstrated in its opening brief (Dkt. No. 16), the Smallen Trust easily meets these requirements.

The typicality requirement of Rule 23 is satisfied "so long as the claims of the class representative and class members are based upon the same legal or remedial theory." *Wolfe*, 275 F.R.D. at 628 (citation omitted); *see also Dannis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.")). The Smallen Trust's claims are typical because, as did all class members, the Smallen Trust purchased Western Union securities during the Class Period at prices artificially inflated by Defendants' false and misleading statements and/or omissions, and suffered damages when corrective disclosures removed the

inflation and caused the price of Western Union securities to fall.  Thus, the Smallen Trust's claims are typical of other class members' claims.

The adequacy requirement of Rule 23 is satisfied where there is "(1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation."  *Wolfe*, 275 F.R.D. at 628.  There are no conflicts between the Smallen Trust and the class, as both seek to recover losses caused by the Defendants' false and misleading statements.  In addition, the Smallen Trust has demonstrated its adequacy by selecting Pomerantz LLP ("Pomerantz") as Lead Counsel.

## IV. THE PENSION FUND IS ATYPICAL AND INADEQUATE TO REPRESENT THE CLASS

Even assuming, *arguendo*, that the Pension Fund possesses the greatest financial interest in this litigation (and for the reasons discussed above, the Smallen Trust respectfully submits that the Pension Fund does not), the Pension Fund is subject to unique defenses that disqualify it from serving as Lead Plaintiff.  As discussed above, the presumptively "most adequate plaintiff" is the movant with the largest financial interest who has also made a *prima facie* showing that he meets the adequacy and typicality requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Molycorp*, 2012 U.S. Dist. LEXIS 89191, at *5; *Cavanaugh*, 306 F.3d at 732.  After a presumptive lead plaintiff is identified, the Court must then determine if the presumption has been rebutted with proof that the "presumptively most adequate plaintiff will not . . . adequately protect the interest of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Beck*, 457 F.3d at 297 (if subject to a unique defense, "the representative might devote time and effort to the defense at the expense of issues that are common and controlling for the class").

8

Even if a unique defense has yet to materialize, the mere threat that it could become the focus of the litigation is enough to disqualify a would-be lead plaintiff. *See In re Enzymotec Ltd. Sec. Litig.*, 2015 WL 91835, at *2 (D.N.J. Mar. 3, 2015) ("[T]he competing plaintiff must show simply that there is ***some degree of probability*** that the defense ***might*** 'become a major focus' in the case.") (emphases added). Here, the Pension Fund is potentially subject to unique defenses that could become the focus of the litigation and render it atypical of the class it seeks to represent. The Pension Fund relied on a partial corrective disclosure three years prior to the end of the Class Period, and it suffered no losses at all in connection with the only corrective disclosure alleged in two of the three complaints on file in the Related Actions. Accordingly, if the Court ultimately determines that previously litigated questions of fraud and loss causation relating to the October 30, 2012 disclosures are not properly adjudicated in this action, the Pension Fund would be "subject to unique adequacy and typicality defenses that render it an inadequate Class representative." *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011). If the October 30, 2012 disclosures are ultimately excluded from this litigation, then the Pension Fund, having suffered no losses traceable to the January 2017 disclosures—the only corrective disclosures alleged in all the complaints filed in the Related Actions—might be found to lack standing to assert claims against Western Union, potentially resulting in the unnecessary dismissal of the entire action. *Id.* at 240 ("[T]he Court is concerned that if the Fund, as lead plaintiff, is unable to prove loss causation and is found to lack standing, the entire case could be dismissed."). Certainly, the fact that the Pension Fund might lack standing makes it atypical of the class it seeks to represents, and risks making the Pension Fund's standing the focus of the litigation.

For these reasons, irrespective of the Pension Fund's financial interest, the Pension Fund is not the most adequate plaintiff because it is subject to unique typicality and adequacy defenses. As such, the Pension Fund may not be appointed Lead Plaintiff.

## V. THE SMALLEN TRUST'S SELECTION OF COUNSEL SHOULD BE APPROVED

This Court should approve the Smallen Trust's selection of Pomerantz as Lead Counsel for the Class. Pomerantz is a premiere firm in the area of securities litigation. For more than 75 years, Pomerantz has represented defrauded investors, recovering well over $1 billion on its clients' behalf. Pomerantz has been appointed lead plaintiff by numerous courts throughout the country. *See, e.g.*, *Lerner v. Northwest Biotherapeutics, Inc. et al.*, 8:15-cv-02532 (D. Md.) (J. Hazel); *Flynn v. Sientra, Inc. et al.*, 2:15-cv-07548 (C.D. Cal.) (J. Otero); *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, 1:15-cv-07199 (S.D.N.Y.) (J. Furman). The firm currently serves as lead counsel in *In re Petrobras Securities Litigation*, No. 1:14-cv-09662 (S.D.N.Y.) (J. Rakoff), a group of consolidated class actions against the Brazilian energy giant Petrobras concerning a sprawling kickback scheme that resulted in over $19 billion in asset impairment and charges. Pomerantz's 36 attorneys across four offices possess the requisite expertise and resources to diligently prosecute this action.

## CONCLUSION

For the foregoing reasons, the Smallen Trust respectfully requests that the Court grant its motion in its entirety.

Dated: April 17, 2017

                                               **POMERANTZ LLP**

                                               */s/ Jeremy A. Lieberman*
                                               Jeremy A. Lieberman
                                               J. Alexander Hood II
                                               Hui M. Chang (not admitted)

600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom (not admitted)
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Movant and Proposed
Lead Counsel for the Class*

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein (*not admitted*)
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Additional Counsel for Movant*

11