**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:17-cv-00474-KLM

LAWRENCE HENRY SMALLEN and LAURA ANNE SMALLEN REVOCABLE LIVING TRUST, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

v.

THE WESTERN UNION COMPANY, et al.,

     Defendants.

---

Civil Action No. 1:17-cv-00648-KMT

UA LOCAL 13 PENSION FUND, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

v.

THE WESTERN UNION COMPANY, et al.,

     Defendants.

---

Civil Action No. 1:17-cv-00809-KLM

MARTIN HERMAN, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

v.

THE WESTERN UNION COMPANY, et al.,

     Defendants.

---

**PLAINTIFF UA LOCAL 13 PENSION FUND'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF**

---

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ....................................................................................... 1

II.   ARGUMENT .................................................................................................................. 3

    A.    The Pension Fund Should Be Appointed Lead Plaintiff .......................................... 3

    B.    The Smallen Trust's Attacks Are Not Proof that the Pension Fund is Atypical or Inadequate ............................................................................................ 4

        1.    Claims Surrounding the October 30, 2012 Partial Disclosure Are Not Precluded by the Voluntary Dismissal of the *City of Taylor* Action ........................................................................................................ 4

        2.    The October 30, 2012 Partial Disclosure Demonstrates Loss Causation for the Pension Fund's Losses .................................................... 7

    C.    The Smallen Trust's Attacks Against the Pension Fund's Claims Are Not Unique, but the Arguments Themselves Confirm that the Smallen Trust Is Unable to Adequately Protect the Interests of the Entire Class ............................ 12

III.  CONCLUSION .............................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adams v. Kinder-Morgan, Inc.*,
  340 F.3d 1083 (10th Cir. 2003) ................................................................7

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) .......................................................10, 11

*Borenstein v. Finova Grp.*,
  No. CIV 00-619-PHX-SMM, 2000 U.S. Dist. LEXIS 14732
  (D. Ariz. Aug. 30, 2000) .................................................................3, 14

*Brown v. China Integrated Energy, Inc.*,
  No. CV 11-02559 MMM, 2011 U.S. Dist. LEXIS 151131
  (C.D. Cal. Aug. 29, 2011) ...................................................................9

*City of Taylor Police and Fire Retirement System v. The Western Union
  Company, et al.*,
  No. 1:13-cv-03325-MSK-MJW (D. Colo.)...................................... *passim*

*Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor
  Capital Advisors*,
  498 F.3d 920 (9th Cir. 2007) ................................................................6

*Foley v. Transocean Ltd.*,
  272 F.R.D. 126 (S.D.N.Y. 2011) .........................................................11

*Freeland v. Iridium World Commc'n's, Ltd.*,
  233 F.R.D. 40 (D.D.C. 2006).............................................................11

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001).................................................................4

*In re Cox Enters., Inc. Set-Top Cable TV Box Antitrust Litig.*,
  835 F.3d 1195 (10th Cir. 2016) .............................................................6

*In re GE Sec. Litig.*,
  No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133
  (S.D.N.Y. July 29, 2009) ....................................................................8

*In re GeoPharma, Inc. Sec. Litig*,
  399 F. Supp. 2d 432 (S.D.N.Y. 2005)....................................................11

*In re Loewen Grp. Inc. Sec. Litig.*,
  395 F. Supp. 2d 211 (E.D. Pa. 2005) .....................................................11

**Page**

*In re OmniVision Techs.*,
   No. C-04-2297 SC, 2005 U.S. Dist. LEXIS 16009
   (N.D. Cal. July 29, 2005) .......................................................................................... 11

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
   No. 07-02830, 2010 U.S. Dist. LEXIS 132902
   (W.D. Tenn. Dec. 15, 2010) ........................................................................................ 9

*In re Take-Two Interactive Sec. Litig.*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008) .......................................................................... 2

*In re TyCom Ltd. Sec. Litig.*,
   No. 03-CV-1352-PB, 2005 U.S. Dist. LEXIS 19154
   (D.N.H. Sept. 2, 2005) .............................................................................................. 11

*In re VimpelCom, Ltd.*,
   No. 1:15-cv-8672 (ALC), 2016 U.S. Dist. LEXIS 135050
   (S.D.N.Y. Sept. 26, 2016) ............................................................................................ 8

*Juliar v. SunOpta, Inc.*,
   No. 08 Civ. 933 (PAC), 2009 U.S. Dist. LEXIS 58118
   (S.D.N.Y. Jan. 30, 2009) ............................................................................................. 8

*Kux-Kardos v. VimpelCom, Ltd.*,
   151 F. Supp. 3d 471, 476 (S.D.N.Y. 2016) .................................................................. 2

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
   256 F.R.D. 586 (N.D. Ill. 2009) ................................................................................... 9

*Montoya v. Mamma.com Inc.*,
   No. 05 Civ. 2313 (HB), 2005 U.S. Dist. LEXIS 10224
   (S.D.N.Y. May 31, 2005) ........................................................................................ 9, 11

*Richardson v. TVIA, Inc.*,
   No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406
   (N.D. Cal. Apr. 16, 2007) ....................................................................................... 9, 13

*Ross v. Abercrombie & Fitch Co.*,
   257 F.R.D. 435 (S.D. Ohio 2009) ................................................................................ 9

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011) ......................................................................................... 2, 5, 6, 7

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) ..................................................................................................... 5

**Page**

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
 No. 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028
 (S.D.N.Y. Jan. 25, 2006)...........................................................................................9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
 §78u-4(a)(3)(B)(iii)(I)...........................................................................................3, 4
 §78u- 4(a)(3)(B)(iii)(II) .............................................................................................4
 §78u-4(a)(3)(B)(iii)(II)(bb).......................................................................................12

Federal Rules of Civil Procedure
 Rule 23 ................................................................................................... *passim*

**LEGISLATIVE HISTORY**

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679........................3

Proposed lead plaintiff UA Local 13 Pension Fund (the "Pension Fund") respectfully submits this reply memorandum in further support of its motion for appointment as lead plaintiff, and in response to the opposition filed by the Lawrence Henry Smallen and Laura Anne Smallen Revocable Living Trust (the "Smallen Trust"), Dkt. No. 23.[1]

## I.    PRELIMINARY STATEMENT

Of the two remaining lead plaintiff movants, it is the Pension Fund which qualifies as the "most adequate plaintiff" under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), as it possesses the largest financial interest among the competing movants and otherwise satisfies the requirements of Rule 23.  Thus, the Pension Fund should be appointed Lead Plaintiff.

In opposing the Pension Fund's motion, the Smallen Trust concedes that the Pension Fund suffered a loss of over $175,000 compared to its own loss of $10,771.  Dkt. No. 23 at 4. Recognizing that it has a significantly smaller stake in the relief sought by the class, the Smallen Trust attempts to leapfrog the Pension Fund by making arguments which are not just contrary to law, but which undermine a substantial portion of the class's claims.  Dkt. No. 23 at 4-6.  First, the Smallen Trust argues that the claims associated with the October 30, 2012 partial disclosure were "discarded allegations" in a previous action.  *Id.*  The Smallen Trust so argues even though the claims were made by *a completely different plaintiff, in a different case* in which *no class was certified*.  The Smallen Trust then goes on to argue that the Pension Fund – and with it all other class members who suffered losses in connection with that disclosure – is precluded from taking "a second bite of the proverbial apple."  Dkt. No. 23 at 2, 4-6 (citing to *City of Taylor Police and Fire Retirement System v. The Western Union Company, et al.*, No. 1:13-cv-03325-MSK-MJW (D. Colo.) (the "*City of Taylor* Action")).

---

[1]    Martin Herman, who filed a complaint in the Central District of California which was subsequently transferred to this District, also filed a motion for appointment as lead plaintiff in the *Herman* Action.  He did not file a response to either the Smallen Trust's motion or the Pension Fund's motion.

The Smallen Trust's preclusion argument is concerning for several reasons. First, the Smallen Trust's argument readily discards almost a year's worth of defendants' alleged misstatements, the most significant partial disclosure in the Class Period (in terms of stock price declines), and millions of dollars in class members' losses.[2] Second, and even more troubling, the Smallen Trust makes its argument **without citation to any supporting authority**. The Smallen Trust's inability to direct the Court to any supporting authority is no surprise, as well-established Supreme Court precedent directly contradicts the Smallen Trust's argument. *See Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) ("Neither a proposed class action nor a rejected class action may bind nonparties."). The Pension Fund was not a "party" to the *City of Taylor* Action. Nor was the class in that case certified when it was voluntarily dismissed. *See id.* Consequently, the argument that the Court should ignore the 2012 allegations is inconsistent with applicable law. *See infra*, §II.B.1.

The Smallen Trust also argues that the Pension Fund may not be able to demonstrate loss causation because it sold all of its shares *after* the October 30, 2012 partial loss-causing disclosure, but *before* the end of the Class Period on January 19, 2017. Dkt. No. 23 at 8-9. The October 30, 2012 partial disclosure, however, caused the *largest* Class Period decline in Western Union stock, and the overwhelming weight of authority states that "a plaintiffs theory of 'loss causation may be premised on partial revelations that do not uncover the complete extent of the falsity of specific prior statements' where the partial disclosure 'somehow reveals to the market that a defendant's prior statements were not entirely true.'" *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 476 (S.D.N.Y. 2016) (quoting *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283 (S.D.N.Y. 2008)). Because claims based upon the October 30, 2012 partial disclosure are not precluded by the voluntary dismissal of the *City of Taylor* Action by the plaintiff in that case, the partial disclosure

---

[2]   The Class Period in each of the related actions is defined as February 24, 2012 to January 19, 2017.

demonstrates loss causation for the Pension Fund as well as all those other class members who also sold their shares after that significant partial disclosure.  *See infra*, §II.B.2.

While the Smallen Trust's meritless attacks on the Pension Fund fail to rebut the presumption which lies in favor of the Pension Fund, the arguments do succeed in one respect – they make crystal clear that the Smallen Trust is willing to advance almost any argument to be appointed lead plaintiff in this case, even if that means discarding a significant portion of the class's claims.  By discarding the October 30, 2012 partial disclosure, and the millions of losses that were incurred as a result, the Smallen Trust discards the claims of every class member that purchased Western Union shares between February 24, 2012 and October 30, 2012, and held the shares until after October 30, 2012. Such eagerness to abandon a large portion of the class further confirms that the Smallen Trust is unwilling to protect the interests of the *entire* class and should not be appointed Lead Plaintiff. *Borenstein v. Finova Grp.*, No. CIV 00-619-PHX-SMM, 2000 U.S. Dist. LEXIS 14732, at *26-*27 (D. Ariz. Aug. 30, 2000).  *See also infra*, §II.C.  The Smallen Trust's motion must be denied, and the Pension Fund should be appointed Lead Plaintiff.

## II.     ARGUMENT

### A.     The Pension Fund Should Be Appointed Lead Plaintiff

The PSLRA provides that the Court must appoint the lead plaintiff movant that has both the "largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The Pension Fund is the movant which qualifies under both prongs of the PSLRA.

As the Smallen Trust concedes, with a loss of over $175,000, the Pension Fund has, by far, the largest financial interest of the two lead plaintiff movants.  In addition to its substantial financial stake, the Pension Fund also satisfies the typicality and adequacy requirements of Rule 23.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  Moreover, the Pension Fund is an institutional investor, and thus, is precisely the type of investor Congress sought to encourage to serve as lead plaintiff when it enacted

the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). The Pension Fund, therefore, is presumptively the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)

### B. The Smallen Trust's Attacks Are Not Proof that the Pension Fund is Atypical or Inadequate

To overcome the presumption which lies in favor of appointing the Pension Fund as lead plaintiff, the PSLRA requires "proof" that the Pension Fund is either inadequate or atypical to serve as lead plaintiff. *See* 15 U.S.C. §78u- 4(a)(3)(B)(iii)(II). For, "once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[] and adequate' job." *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001).[3]

Here, the Smallen Trust has not offered any ***proof*** that the Pension Fund fails to satisfy the typicality or adequacy requirements of Rule 23, nor can it. Instead, the Smallen Trust offers legal challenges to the Pension Fund's claims, but does so without citation to controlling authority. And, in doing so, the Smallen Trust both fails to rebut the presumption, and demonstrates that ***it*** is unable to adequately represent the interests of the entire class.

### 1. Claims Surrounding the October 30, 2012 Partial Disclosure Are Not Precluded by the Voluntary Dismissal of the *City of Taylor* Action

The Smallen Trust's argument that it should be appointed lead plaintiff instead of the Pension Fund rests solely on the Smallen Trust's willingness to abandon the interests of class members which purchased Western Union shares prior to October 30, 2012, and then suffered losses when

---

[3]   Unless otherwise noted, all emphasis is added and citations are omitted.

they sold their shares after the October 30, 2012 partial disclosure.  *See* Dkt. No. 23.  To gain an advantage in connection with its lead plaintiff application, the Smallen Trust argues that the claims of all class members who suffered losses stemming from the October 2012 partial disclosure are barred because they were part of a previous action that was voluntarily dismissed by the lead plaintiff in that case.  Dkt. No. 23 at 2, 4-6.  Tellingly, the Smallen Trust makes its argument ***without citation to any supporting authority***.  *See id*.  That the Smallen Trust's would jettison a significant portion of the class's claims is concerning, that it would do so when Supreme Court precedent directly contradicts its argument is even more troubling.  *Bayer*, 564 U.S. at 312-14.

According to the Supreme Court, in order for issues raised in an action to be precluded by a previous action, "at least two conditions must be met."  *Bayer*, 564 U.S. at 300.  First, the issues in the first case "must be the same" as the issues presented in the second action.  *Id.*  Second, the party asserting the issues in the second action "must have been a party" to the first action.  *Id.*  Here, even assuming, *arguendo*, that there are some overlapping issues in the two cases, the Pension Fund was ***not*** a "party" to the previous suit and the class was never certified.  *See id*. at 301.[4]

It is axiomatic that "[a] court's judgment binds only the parties to a suit, subject to a handful of discrete and limited exceptions."  *Id.* at 312-13.  The Supreme Court has "repeatedly 'emphasize[d] the fundamental nature of the general rule' that only parties can be bound by prior judgments; accordingly, [it] ha[s] taken a 'constrained approach to nonparty preclusion.'"  *Id.* at 313 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 898 (2008)).  The question, then, is whether the Pension Fund was a "party" in the *City of Taylor* Action – and the answer is, definitively, no.

"'A "party" to litigation is "[o]ne by or against whom a lawsuit is brought."'"  *Id*. at 313.  In the context of issue preclusion, the Supreme Court has rejected "'the novel and surely erroneous

---

[4]    The *City of Taylor* Action actually involved different issues.  It focused on a discrete set of issues limited to Western Union's Mexican and Southwestern United States business, while the current related actions involve a broader set of misstatements and the failure to disclose fraudulent practices across the Company's global operations.

argument that a nonnamed class member is a party to the class-action litigation ***before the class is certified***.'" *Id.* at 313 (emphasis in original).[5]  As a result, "[n]either ***a proposed class action*** nor a rejected class action may bind nonparties." *Id.* at 315.  And, "[t]he great weight of scholarly authority--from the Restatement of Judgments to the American Law Institute to Wright and Miller-- agrees that ***an uncertified class action cannot bind proposed class members***." *Id*. at 315-16 & n.11 (noting that in *Sturgell*, the Supreme Court "could hardly have been more clear that a 'properly conducted class action,' with binding effect on nonparties, can come about in federal courts in just one way--through the [class certification] procedure set out in Rule 23").

Here, the Smallen Trust concedes that the Pension Fund was not the lead plaintiff in the *City of Taylor* Action.  Dkt. No. 23 at 6 (conceding that SEB Asset Management S.A. and SEB Investment Management AB (together "SEB Management") were appointed in the *City of Taylor* Action).[6]  Neither was the Pension Fund a named party in the *City of Taylor* Action, as it did not file a complaint in the *City of Taylor* Action, nor did it act in a representative capacity in the action at any time.  *See City of Taylor* Action, Dkt. No. 68.  Nor can the Smallen Trust claim that the class was certified in the *City of Taylor* Action, as no motion to certify the class was ever filed in that

---

[5]  *See also In re Cox Enters., Inc. Set-Top Cable TV Box Antitrust Litig.*, 835 F.3d 1195, 1203 (10th Cir. 2016) (following *Bayer*, and noting that where a class has not been certified, "prospective plaintiffs - that is, unnamed members of a putative class - are not parties to class litigation").

[6]  Although the Smallen Trust emphasizes that the Pension Fund made a motion with other class members seeking to be appointed lead plaintiff, that motion was denied. *City of Taylor* Action, Dkt. No. 60.  As a result, at no time was the Pension Fund anything but an unnamed plaintiff in the proposed class action.  *See Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 923 (9th Cir. 2007) (holding that "because the class was never certified, Appellants were not parties to the district court action," despite the fact that the Appellants had filed an unsuccessful lead plaintiff motion).  Similarly, the Smallen Trust states that the Pension Fund's ***counsel*** filed the initial complaint in the *City of Taylor* Action.  Dkt. No. 23 at 2. This fact is also irrelevant because the complaint was filed for the City of Taylor Police and Fire Retirement System, a ***completely different entity*** than the Pension Fund.  The fact that the City of Taylor Police and Fire Retirement System used Robbins Geller Rudman and Dowd LLP as counsel in its action in 2013 in no way magically transforms the Pension Fund into a party to that action merely because years later, it selected Robbins Geller to represent it in this action.

action.  As a result, the Pension Fund was nothing more than an unnamed member of the putative class in the *City of Taylor* Action.

The parties to the *City of Taylor* action, then, were the appointed lead plaintiff SEB Management and the defendants.  *See City of Taylor* Action, Dkt. No. 116.[7]  Consequently, the Pension Fund is not precluded from raising claims based upon the October 2012 partial disclosure in this case.

### 2. The October 30, 2012 Partial Disclosure Demonstrates Loss Causation for the Pension Fund's Losses

The October 2012 partial disclosure is properly included in this action, rendering the Smallen Trust's speculation that the Pension Fund cannot prove loss causation meritless.  *See* Dkt. No. 23 at 8-9 (the Smallen Trust's loss causation argument relying on the preclusion of the October 2012 partial disclosure from the action).

In the Smallen Trust's initial lead plaintiff motion, it sought to have the *UA Local 13* Action consolidated with its action.  Tellingly, it made no arguments then concerning the October 2012 allegations in the complaint filed in the *UA Local 13* Action.  It was ***only when it became clear that***

---

[7]    The Tenth Circuit requires four elements to be met in order to preclude issues or claims in a subsequent action: "'(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been fully adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.'"  *See Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1093-94 (10th Cir. 2003).  The Smallen Trust has not, and cannot, demonstrate any of these elements are met in this case.  As detailed herein, *Bayer* ends the inquiry – because the *City of Taylor* Action was not certified, the Pension Fund was not a party to it.  *See* Bayer, 564 U.S. at 314-15.  However, the Tenth Circuit's additional three factors are also not met.  First, the issues were not identical.  The *City of Taylor* Action focused on a discrete set of issues limited to Western Union's Mexican and Southwestern United States business, while the current related actions involve a broader set of misstatements and the failure to disclose fraudulent practices across the Company's global operations.  Second, the *City of Taylor* Action was not "fully adjudicated on the merits," but rather was voluntarily dismissed.  *City of Taylor* Action, Dkt. Nos. 115-16.  Finally, the Pension Fund did not have a "full and fair opportunity to litigate the issue in the prior action" because it was not a party to the action, it did not serve in a representative capacity at any time, and the case was voluntarily dismissed without adjudication on the merits.  Consequently, the preclusion elements have not been met under applicable Tenth Circuit and Supreme Court precedent.

***the Smallen Trust did not have the largest financial interest*** that it pivoted in an attempt to seize control of the case.  Notably, the Smallen Trust does not contend (because it cannot), that the Pension Fund (or any other class members who sold their shares after the October 30, 2012 partial disclosure) did not suffer a loss as a result of the October 30, 2012 disclosure.  Rather, the Smallen Trust concedes that the Pension Fund lost over $175,000 (over 16 times greater that the Smallen Trust's loss) as a result of the October 2012 partial disclosure.  Dkt. No. 23 at 4-5.  Nor does the Smallen Trust contend that the October 30, 2012 disclosure was insignificant, as the partial disclosure caused the price of Western Union stock to plummet over $5 per share, as alleged in the *UA Local 13* Action.  *See UA Local 13* Action, Dkt. No. 3, ¶¶51-52.

Although the Pension Fund sold its shares prior to the final Class Period-ending disclosure on January 19, 2017, the overwhelming majority of courts recognize that this is not an impediment to serving as lead plaintiff.  "[W]here a putative lead plaintiff sold all its shares after a partial disclosure of misconduct by the defendant but before the final disclosure that led to the lawsuit, ***that putative lead plaintiff does not face the unique defense of having to show loss causation*** to the extent that it cannot serve as lead plaintiff."  *Juliar v. SunOpta, Inc.*, No. 08 Civ. 933 (PAC), 2009 U.S. Dist. LEXIS 58118, at *7-*8 (S.D.N.Y. Jan. 30, 2009) (appointing institutional investor who sold shares after partial disclosure as lead plaintiff); *see also In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *12 (S.D.N.Y. July 29, 2009) ("Loss causation 'does not require full disclosure and can be established by partial disclosure during the class period which causes the price of shares to decline.'"); *In re VimpelCom, Ltd.*, No. 1:15-cv-8672 (ALC), 2016 U.S. Dist. LEXIS 135050, at *4-*6 (S.D.N.Y. Sept. 26, 2016) (movant not subject to unique defenses where sold out after partial disclosures, but before the end of the class period); *Brown v. China Integrated Energy, Inc.*, No. CV 11-02559 MMM (PLAx), 2011 U.S. Dist. LEXIS 151131, at *39 (C.D. Cal. Aug. 29, 2011) ("The fact that subsequent disclosures occurred after [the lead plaintiff movant] no longer owned [the company's] stock does not show that [the movant] will be an inadequate lead plaintiff.");

*In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830, 2010 U.S. Dist. LEXIS 132902, at *31-*32 (W.D. Tenn. Dec. 15, 2010) ("Although the Supreme Court has recognized that, 'where the purchaser sells his shares quickly before the relevant truth begins to leak out,' no loss based on a misrepresentation occurs, . . . that defect does not preclude claims where there are ***partial*** disclosures before an investor sells . . . .") (emphasis in original); *Richardson v. TVIA, Inc*., No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *20-*21 (N.D. Cal. Apr. 16, 2007) (movant that sold all of its shares after a partial disclosure, and prior to the end of the class period was typical and adequate).[8]

Indeed, courts routinely appoint investors as lead plaintiff who do not hold ***any*** shares at the end of the class period if they have sold their shares of stock after a partial disclosure. *See, e.g.*, *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028, at *18 (S.D.N.Y. Jan. 25, 2006) ("the Operating Engineers Trust is not unable to prove loss causation simply because all of its shares were sold before the end of the Class Period"); *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313 (HB), 2005 U.S. Dist. LEXIS 10224, at *6-*7 (S.D.N.Y. May 31, 2005) (same).  In other words, for PSLRA purposes, the Pension Fund suffered a compensable loss – in this case, one that is far larger than the Smallen Trust's loss.

The Smallen Trust relies on ***one inapposite case***, *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231 (E.D.N.Y. 2011), to support its argument that the Pension Fund is subject to a unique defense because it sold its shares prior to the end of the Class Period.  In that case, the complaint alleged misconduct concerning illegal payments to a customer that were not disclosed to shareholders.  *Id.* at 233.  The movant with the greatest loss sold all of its shares after a disclosure in

---

[8]     *See also Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 456 (S.D. Ohio 2009) (at class certification stage, "Plaintiff has shown that even 'in-and-out' investors may have suffered damages due to partial disclosures of the alleged fraud during the Class Period"); *Makor Issues & Rights, Ltd. v. Tellabs, Inc*., 256 F.R.D. 586, 596 (N.D. Ill. 2009) (at class certification stage, court did not exclude in and out traders "because Plaintiffs have alleged a 'series of partial disclosures' that slowly revealed Tellabs's true performance over a period of four months").

which the company merely "'announced that its preliminary fourth quarter and full year 2009 financial results would be far below its prior guidance'" but said nothing about customer payments. *Id*. at 240.   Because the supposed partial disclosure was completely unrelated to the alleged misconduct, the court found the movant with the largest loss could not allege loss causation and was therefore subject to a unique defense.  *Id*.

Here, by contrast, it is uncontested that the October 30, 2012 partial disclosure directly relates to the misconduct alleged in the related actions.  The October 2012 partial disclosure included statements regarding the negative impact of ***compliance-related actions*** which are specifically related to the final revelation of defendants' fraud.  *See UA Local 13* Action, Dkt. No. 3, ¶¶82-83 (final disclosure disclosing, among other things that Western Union admitted that it violated ***compliance policies*** that enabled the proliferation of criminal activities and fraudulent schemes; and despite repeated ***compliance reviews*** identifying suspicious or illegal behavior by its agents, Western Union failed to identify the activity in its reports to law enforcement); and *compare with Smallen Trust* Action, Dkt. No. 1, ¶21 (alleging misstatements in February 2012 regarding the Company's ***compliance programs***) and ¶35 (Class Period ending disclosure stating "Western Union's failure to implement proper controls and discipline agents that violated ***compliances policies*** enabled the proliferation of illegal gambling, money laundering and fraud-related schemes" and "Despite repeated ***compliance*** review identifying suspicious or illegal behavior by its agents, Western Union almost never identified the suspicious activity those agents engaged in in its required reports to law enforcement").

In addition, the October 30, 2012 disclosure resulted in the largest stock drop of any partial disclosure in this case, including the January 19, 2017 decline that both movants agree ended the Class Period.  *Compare UA Local 13* Action, Dkt. No. 3, ¶¶51-52 *with UA Local 13* Action, Dkt. No. 3, ¶¶62-63, 78-79, 81-86.  In fact, the October 2012 partial disclosure caused the price of the Company's stock to plummet over $5, or about 29% on volume of approximately 63 million shares.

At the end of the Class Period, in the days following the January 19, 2017 disclosure, the stock dropped over $2, or about 10%.  *UA Local 13* Action, Dkt. No. 3, ¶86.  Consequently, the Pension Fund can allege loss causation under *FalconStor*.  277 F.R.D. at 238 ("There must be a showing that the 'stock price later declined . . . immediately following a ***disclosure of the alleged misconduct to the public*.'") (emphasis in original).

A plaintiff need not, however, allege a complete disclosure of the fraud in order to adequately demonstrate loss causation.  *See, e.g.*, *Freeland v. Iridium World Commcn's, Ltd.*, 233 F.R.D. 40, 47 (D.D.C. 2006).  To the contrary, "reading *Dura* to require proof of a complete, corrective disclosure would allow wrongdoers to immunize themselves with a protracted series of partial disclosures." *Id.*[9]  The Pension Fund sold its shares only after the significant October 30, 2012 partial disclosure, and "can allege that the subject of the fraudulent statement or omissions was the cause of the actual loss suffered and, therefore, satisfy the test[] articulated by the Supreme Court in *Dura*."  *Montoya*, 2005 U.S. Dist. LEXIS 10224, at *7; *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 132 (S.D.N.Y. 2011) ("We [see] no reason why a net seller who sold all of his shares after the fraud began to be exposed, and was thus legally harmed by the fraud in all of its sales, could not be an adequate lead plaintiff.").

---

[9]    *See also In re GeoPharma, Inc. Sec. Litig*, 399 F. Supp. 2d 432, 453 (S.D.N.Y. 2005) (holding that where an alleged misstatement conceals a condition or event which then occurs and causes plaintiff's loss, it is the materialization of the undisclosed condition or event which causes the loss, without need for a corrective disclosure); *In re Loewen Grp. Inc. Sec. Litig*., 395 F. Supp. 2d 211, 218 (E.D. Pa. 2005) (post-*Dura* decision, denying defendants' motion for partial summary judgment: "Plaintiffs have pleaded loss causation adequately by alleging that they purchased TLGI stock at an inflated price and lost money when the price fell. . . . Because the existence and significance of any losses is unclear, loss causation is an inappropriate ground for summary judgment."); *In re TyCom Ltd. Sec. Litig*., No. 03-CV-1352-PB, 2005 U.S. Dist. LEXIS 19154, at *42 (D.N.H. Sept. 2, 2005) (plaintiffs satisfied *Dura* "by alleging that 'defendants' fraudulent misrepresentations and omissions caused the price of TyCom stock to be artificially inflated, so that when, over time, the true facts came out regarding TyCom's prospects and the state of demand for bandwidth generally, facts that were at odds with defendants' prior representations, the stock lost value and investors suffered a loss'"); *In re OmniVision Techs.*, No. C-04-2297 SC, 2005 U.S. Dist. LEXIS 16009, at *18-*19 (N.D. Cal. July 29, 2005) (plaintiffs satisfied *Dura* by alleging: "'Plaintiffs purchased OmniVision securities at artificially inflated prices and suffered damages when revelation of the true facts caused a decline in the value of their investments'")

- 11 -

As demonstrated above, the October 30, 2012 partial disclosure is not precluded from this action. *See* §II.B.1., *infra*. As a result, the Pension Fund, and its fellow class members, can easily demonstrate loss causation on the basis of that partial disclosure, and the Pension Fund is not subject to a unique defense regarding loss causation.

C.      **The Smallen Trust's Attacks Against the Pension Fund's Claims Are Not Unique, but the Arguments Themselves Confirm that the Smallen Trust Is Unable to Adequately Protect the Interests of the Entire Class**

The Smallen Trust's attacks against the Pension Fund are not "unique" to the Pension Fund. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(bb) (most adequate plaintiff presumption can be rebutted by "unique defenses that render such plaintiff incapable of adequately representing the class"). The Smallen Trust itself alleges a Class Period which begins on February 24, 2012. Dkt. No. 1, ¶1. As a result, the Smallen Trust's own complaint overlaps the class period in the *City of Taylor* Action ***by eight months***. The Smallen Trust's complaint also names three of the same defendants named in the *City of Taylor* Action, seeking to hold them liable for misstatements made in 2012. *Compare Smallen Trust* Action, Dkt. No. 1, ¶¶13-15 *with City of Taylor* Action, Dkt. No. 68, ¶¶22-24. In addition, the Smallen Trust sought consolidation of the *UA Local 13* Action with its own action, making no mention of excluding the allegations in the *UA Local 13* Action which it now claims are precluded. *See* Dkt. No. 16 at 4 (Smallen Trust's opening motion for consolidation and appointment as lead plaintiff stating "the Related Actions allege substantially the same wrongdoing, namely that defendants issued materially false and misleading statements and omissions that artificially inflated the price of Western Union's securities and subsequently damaged the Class ***when the Company's stock price crashed as the truth emerged***"). Thus, if defendants were to raise the meritless preclusion defense to the 2012 allegations, such attacks would be leveled against ***anyone*** appointed

lead plaintiff, including the Smallen Trust.[10]  As a result, the preclusion defense is anything but "unique" to the Pension Fund.

Similarly, the arguments concerning loss causation for shares sold after the October 30, 2012 disclosure – but prior to the end of the Class Period – are not "unique" to the Pension Fund.  Rather, the October 2012 partial disclosure caused the largest drop in Western Union stock during the Class Period.  And, the trading volume following the disclosure (approximately 63 million shares) demonstrates that a significant number of class members also sold their shares after that disclosure, suffering losses.  *See TVIA*, 2007 U.S. Dist. LEXIS 28406, at *20-*21.

In *TVIA*, the court held that although the partial disclosure relied upon by the proposed lead plaintiff "may not constitute an explicit corrective disclosure exposing the alleged fraud," the movant "may nevertheless be able to establish loss causation by demonstrating a causal connection between the alleged deceptive acts and the injury suffered."  *Id*. at *20.  In addition, the court noted that the partial disclosure "was immediately followed by the single greatest drop in share price, along with the highest trading volume, during the Class Period."  *Id.* at *20-*21.  Thus, "[i]t is not unlikely that other class members . . .will seek to recover for this loss, and it is also not unlikely that defendants will raise the same loss causation defense against the entire class.  ***The court therefore cannot conclude that the potential vulnerability to a loss causation defense is unique to [the movant's] case***."  *Id.* at *21.  Thus, the lead plaintiff movant in *TVIA* who sold after the partial disclosure satisfied the "typicality and adequacy requirements."  *Id*.  Similarly, here, assuming, *arguendo*, that the defendants would raise a defense against the October 30, 2012 partial disclosure, such a defense would not be unique to the Pension Fund, and as a result, the Pension Fund easily satisfies the typicality and adequacy requirements of Rule 23.

---

[10]   As demonstrated above, since none of the class members who suffered losses as a result of the October 2012 partial disclosure were a "party" to the *City of Taylor* Action, except SEB Management, the preclusion argument is meritless.  *See* §II.B.1., *supra*.

On the other hand, the Smallen Trust's willingness to jettison the claims of those class members with losses tied to the October 2012 partial disclosure to gain a strategic advantage for itself and its lawyers clearly demonstrates that the Smallen Trust is not able to adequately protect the interests of the **entire** class. *See Finova*, 2000 U.S. Dist. LEXIS 14732, at *26-*27 (finding movants unable to adequately represent the interests of the entire class where they had "openly questioned whether [a portion of the class] will be able to recover anything"). Because the Smallen Trust does "not believe" that the allegations and losses based upon the October 2012 partial disclosure "have any place in this litigation," the appointment of the Smallen Trust "would pose a significant risk that the complete interests of all class members would not be fairly and adequately protected." *Id*. Indeed, it is impossible for the Smallen Trust to adequately protect and prosecute claims **which it has already argued should be excluded from this case**. In fact, were the Smallen Trust to be appointed lead plaintiff, and assert the claims associated with the October 2012 disclosure (which is doubtful since it has argued so vigorously against them), defendants would be able to submit the Smallen Trust's own arguments against the class to defeat the claims. [11]

Because the Smallen Trust lacks the largest financial interest, is subject to unique defenses, and cannot adequately represent the interests of the **entire** class, it should not be appointed lead plaintiff.

## III.    CONCLUSION

The Pension Fund is the most adequate plaintiff because it possesses the largest financial interest in the relief sought by the class, and also satisfies the requirements of Rule 23. The Smallen Trust has failed to provide any **proof** to rebut the presumption in favor of the Pension Fund's status

---

[11]    Failing to possess the largest financial interest and attacking claims of the class the Smallen Trust asks this Court to allow it to represent in a fiduciary capacity as lead plaintiff are not the only reason it cannot be appointed lead plaintiff. The Smallen Trust is also subject to unique defenses based upon the timing of its purchases. *See* Dkt. No. 24 at 4-8. Specifically, as set forth in the Pension Fund's opposition to the Smallen Trust's motion, the Smallen Trust's only purchases of Western Union securities came after numerous partial disclosures and only two days before the Class Period-ending disclosure on January 19, 2017. *Id*.

as the "most adequate plaintiff."  Consequently, the Court should appoint the Pension Fund as Lead

Plaintiff and approve its selection of Robbins Geller Rudman & Dowd LLP as Lead Counsel, and

should deny the motions bought by the Smallen Trust and Martin Herman.

DATED:                                        Respectfully submitted,

                                              ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                              HENRY ROSEN
                                              TRICIA L. McCORMICK


                                                          s/ Henry Rosen
                                              ———————————————————————
                                                     HENRY ROSEN

                                              655 West Broadway, Suite 1900
                                              San Diego, CA  92101-8498
                                              Telephone:  619/231-1058
                                              619/231-7423 (fax)
                                              henryr@rgrdlaw.com

                                              ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                              SAMUEL H. RUDMAN
                                              58 South Service Road, Suite 200
                                              Melville, NY  11747
                                              Telephone:  631/367-7100
                                              631/367-1173 (fax)

                                              ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                              ROBERT J. ROBBINS
                                              120 East Palmetto Park Road, Suite 500
                                              Boca Raton, FL  33432
                                              Telephone:  561/750-3000
                                              561/750-3364 (fax)

                                              [Proposed] Lead Counsel for Plaintiff

                                              THE SHUMAN LAW FIRM
                                              RUSTY E. GLENN
                                              600 17th Street, Ste. 2800 South
                                              Denver, CO 80202
                                              Telephone: 303/861-3003
                                              303/536-7849 (fax)
                                              rusty@shumanlawfirm.com

Local Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 1, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 1, 2017.

s/ Henry Rosen
HENRY ROSEN

ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:henryr@rgrdlaw.com

- 1 -

## Mailing Information for a Case 1:17-cv-00474-KLM Lawrence Henry Smallen and Laura Anne Smallen Revocable Living Trust v. Western Union Company, The et al

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Chuan Cheng**
  ccheng@hollandhart.com,amsummers@hollandhart.com,intaketeam@hollandhart.com

- **Rusty Evan Glenn**
  rusty@shumanlawfirm.com,kip@shumanlawfirm.com

- **David Franklin Graham**
  dgraham@sidley.com,efilingnotice@sidley.com,david-graham-9409@ecf.pacerpro.com

- **Joseph Alexander Hood , II**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Henry Rosen**
  henryr@rgrdlaw.com,dianah@rgrdlaw.com

- **Hille von Rosenvinge Sheppard**
  hsheppard@sidley.com,snotton@sidley.com,sbrody@sidley.com,hille-sheppard-
  8094@ecf.pacerpro.com,jlopez@sidley.com,dmclaughlin@sidley.com,efilingnotice@sidley.com,kstead@sidley.com,ntygesso@sidley.com,lois.reid@sidley.com

- **Kip Brian Shuman**
  kip@shumanlawfirm.com,rusty@shumanlawfirm.com

- **Holly Stein Sollod**
  hsteinsollod@hollandhart.com,amsummers@hollandhart.com,cmchallis@hollandhart.com,intaketeam@hollandhart.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)