IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00474-KLM
     Consolidated with Civil Action No. 17-cv-00648-KLM

LAWRENCE HENRY SMALLEN AND LAURA ANNE SMALLEN REVOCABLE LIVING TRUST, individually and on behalf of all others similarly situated, and
UA LOCAL 13 PENSION FUND, individually and on behalf of all others similarly situated,

    Plaintiffs,

v.

THE WESTERN UNION COMPANY,
HIKMET ERSEK,
SCOTT T. SCHEIRMAN, and
RAJESH K. AGRAWAL,

    Defendants.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff Lawrence Henry Smallen and Laura Anne Smallen Revocable Living Trust's (the "Smallen Trust") **Motion for Consolidation,**[1] **Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel** [#15][2] (the "Smallen Trust Motion") and on Plaintiff UA Local 13 Pension Fund's (the "Pension Fund") **Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel** [#17] (the "Pension Fund Motion") (collectively, the "Motions"). Responses [#23, #24] and

---

[1] The request for consolidation of the related actions, No. 17-cv-00648-KMT and No. 17-cv-00474-KLM, has been elsewhere briefed and ruled on. [#14, #29].

[2] "[#15]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). The Court uses this convention throughout this Order.

Replies [#27, #28] were filed in connection with the Motions. In the Motions, the Smallen Trust and the Pension Fund each ask the Court to appoint it Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PLSRA"). In addition, the Smallen Trust requests appointment of Pomerantz LLP as Lead Counsel in this matter, and the Pension Fund requests the appointment of its selected counsel, Robbins Geller Rudman & Dowd LLP, as Lead Counsel in this matter.

## I. Background

In short, Plaintiffs, on behalf of other shareholders of Defendant The Western Union Company ("Western Union"), allege that Defendants made false and/or misleading statements and/or failed to disclose information which resulted in the decline in market value of Defendant Western Union's securities. *Compl.* [#1] ¶¶ 1-7. Each Plaintiff seeks to represent a class of plaintiffs who purchased shares of Western Union between February 24, 2012, and January 19, 2017, and who sustained losses due to Western Union's alleged misrepresentations or failures to disclose. *Id.*

## II. Standard

Pursuant to the PSLRA, 15 U.S.C. § 78u-4, any member of the putative class may seek appointment as "lead plaintiff" for the remainder of the litigation. That request must be made within a 60-day period that begins on the date when the original plaintiff publishes notice of the suit. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). The Court is required to select as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" (i.e. the "most adequate plaintiff"). 15 U.S.C. § 78u-4(a)(3)(B)(I).

In assigning a lead plaintiff, the PSLRA provides a rebuttable presumption that the

most adequate plaintiff is the person or persons who: (1) either filed the complaint or made a motion in response to a notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Fed. R. Civ. P. 23.  *In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 657-58 (D. Colo. 2000).

As for the purported lead plaintiff needing to otherwise satisfy the requirements of Rule 23, only two of Rule 23(a)'s four requirements–typicality and adequacy–factor into the lead plaintiff analysis.  *Assad v. Digitalglobe, Inc.*, Lead Case No. 17-cv-01097-PAB, 2017 WL 3575229, slip op. at *3 (D. Colo. Aug. 17, 2017).  Typicality exists where the claims of the representative plaintiff "arise out of the same course of conduct and are based on the same theories as those of the absent class members and thus their interests are coextensive with and typical of those of all class members."  *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 552 (D. Colo. 1998); *see Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1189 (10th Cir. 1975) (typicality exists "so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory").  The adequacy requirement is satisfied on proof of "(1) the absence of potential conflict between the named plaintiffs and the class members and (2) the counsel chosen by the representative parties is qualified, experienced, and able to vigorously conduct the proposed litigation."  *In re Ribozyme*, 192 F.R.D. at 659.  If these prerequisites are met, the presumption created by the PSLRA can be rebutted only by establishing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### III.  Analysis

Here, the key issue is which of the two Plaintiffs carries the larger financial interest in the relief sought by the putative class.  *In re Ribozyme*, 192 F.R.D. at 657-58.  The PSLRA "gives no guidance as to how a presumptive lead plaintiff's financial interest for purposes of making the determination required by subsection (a)(3)(B)(iii)(I)(bb) should be calculated."  *In re Spectranetics Corp. Secs. Litig.*, Lead Case No. 08-cv-02048-REB-KLM, 2009 WL 1663953, at *2 (D. Colo. June 15, 2009).  Regardless, courts routinely look to the movants' financial loss as the most significant factor in assessing their financial interest in the action.  *See, e.g.*, *In re Bally Total Fitness Sec. Litig.*, Lead Case No. 04C3530, 2005 WL 627960, at *4 (N.D. Ill. Mar. 15, 2005) ("the best yardstick by which to judge 'largest financial interest' is the amount of loss, period"); *see also In re Spectranetics Corp.*, 2009 WL 1663953, at *2 (implicitly acknowledging the primacy of determining total loss).  Courts have used a variety of methods to calculate plaintiffs' purported losses.  *In re Crocs, Inc. Sec. Litig.*, Lead Case No. 07-cv-02351-REB-KLM, 2008 WL 4298316, at *2 (D. Colo. Sept. 17, 2008) (noting a number of acceptable methods used by plaintiffs in multiple jurisdictions).

The Pension Fund relies on a loss causation theory and claims to have suffered losses of $175,900 due to partial disclosures by Defendant Western Union.  *Pension Fund Motion* [#17] at 5; *Pension Fund Reply* [#28] at 2-3.  Loss causation may be shown by either one corrective disclosure revealing fraud to the public and subsequently causing the share price to drop or, as the Pension Fund asserts, by a gradual process of partial disclosures, causing the revelations of fraud to "leak out."  *In re Williams Sec. Litig.—WCG Subclass*, 558 F.3d 1130, 1142-43 (10th Cir. 2009) (explaining the "fatal flaw" in plaintiffs'

theory of loss causation was plaintiffs' failure to sufficiently link revelations of fraud in the partial disclosures to the drop in value and failure to show that the drop was not due to other, non-fraud-related, information contained in the disclosures). Any theory relying on corrective disclosures, including one comprised of multiple partial disclosures, "will have to show both that corrective information was revealed and that this revelation caused the resulting decline in price." *Id.* at 1140. Further, "the disclosure need not precisely mirror the earlier misrepresentation, but it must at least relate back to the misrepresentation and not to some other negative information about the company." *Id.*

The Smallen Trust argues that the Pension Fund has not adequately shown that its losses relate to the alleged fraud by Western Union. *Smallen Trust Response* [#23] at 4-5. It contends that the partial disclosures relied on by the Pension Fund contain multiple pieces of non-fraud-related information that could have independently led to the decline in Defendant Western Union's share value. *Pension Fund Motion* [#17] at 3. The non-fraud-related news contained in the disclosures by Western Union included strategic initiatives and price cutting measures in response to Western Union's third quarter financial results as well as the departure of Western Union's Executive Vice President and President of Global Financial Services. *Id.* Additionally, the partial disclosures noted by the Pension Fund include a release by Western Union that the company did not expect any operating income growth in fiscal 2014 because of increased compliance costs. *Id.* According to the Smallen Trust, all of this non-fraud-related, negative information could have affected Western Union's value independently of any revelations of fraud. *See In re Williams*, 558 F.3d at 1142 (noting that the failure to show why losses "should be attributed to the revelation of fraud and not other non-fraud related news renders [the] methodology

unreliable").

At this early stage of the litigation, the Pension Fund has failed to directly attribute the decline in share value to revelations of fraud in the partial disclosures. *See Pension Fund Motion* [#17] at 3-4. Based on the information provided by the Pension Fund, the Court concludes that the losses claimed by the Pension Fund cannot, at this point, be squarely attributed to the alleged fraud. Therefore, the loss causation calculation provided by the Pension Fund is unreliable and, absent a sufficient showing of the Pension Fund's financial losses attributable to fraud, the Pension Fund is not entitled to the benefit of the rebuttable presumption that it is the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii).

The Smallen Trust alleges losses of $10,771 and calculated its perceived loss using the four factors outlined in *Lax v. First Merchants Acceptance Corp.*, Lead Case No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). *Smallen Trust Motion* [#16] at 7; *see In re Crocs*, 2008 WL 4298316, at *2 (mentioning the use of the *Lax* factors as one of many acceptable methods courts have used to calculate losses). The four factors identified in *Lax* to determine which plaintiff has the largest financial interest are: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." 1997 WL 461036, at *5. The Smallen Trust explains that its loss calculation of $10,771 is based on the 5,000 shares it purchased and retained for $110,500 and the price drop after the revelations of Defendant Western Union's fraud. *Smallen Trust Motion* [#16] at 7. In light of the fact that the Pension Fund has not demonstrated a reliable loss calculation, the Court concludes that the information provided by the Smallen Trust demonstrates that the Smallen Trust possesses the largest financial interest in the relief

sought. *See Decl. of Lieberman, Exhibit C* [#18-3] at 2 (loss chart). The Smallen Trust is therefore entitled to the benefit of the rebuttable presumption that it is the most adequate plaintiff.

The Pension Fund argues that the Smallen Trust is subject to unique defenses which would rebut the PSLRA's presumption that the Smallen Trust is the most adequate plaintiff. *Pension Fund Response* [#24] at 4-8. The Pension Fund argues that the Smallen Trust purchased Western Union shares after partial disclosures were made in 2012, which might call into question the reliance and causation elements of the Smallen Trust's claim. *Id.* The Complaint alleges that the first misstatement by Western Union occurred on February 24, 2012, and the last misstatement occurred on February 19, 2016. *Compl.* [#1] ¶¶ 20-32. However, the Smallen Trust purchased shares on January 17, 2017 and the revelation of fraud by Western Union occurred on January 19, 2017. *Decl. of Lieberman, Ex. C* [#18-3] at 2 (loss chart); *Smallen Trust Motion* [#15] at 3. Therefore, the Smallen Trust's purchase was made after alleged misstatements by Western Union had occurred but before the revelation of fraud, during the "relevant window" of time. *Compl.* [#1] ¶ 20; *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds.*, 568 U.S. 455, 472-73 (2013) (explaining a "requirement that a putative class representative establish that it executed trades between the time the misrepresentations were made and the truth was revealed") (internal quotation marks omitted). Thus, the Pension Fund's argument on this point fails.

The Court next considers Rule 23's requirements of typicality and adequacy. *In re Ribozyme*, 192 F.R.D. at 658 ("explaining that of Rule 23(a)'s four requirements, "only two—typicality and adequacy—directly address personal characteristics of a class representative"). The Smallen Trust asserts, and the Court agrees, that its claims "are

-7-

typical of those of the Class." *Smallen Trust Motion* [#16] at 8; *In re Ribozyme*, 192 F.R.D. at 658. As the Smallen Trust explains, it, "as did all members of the Class, purchased Western Union securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions." *Smallen Trust Motion* [#16] at 8-9; *In re Ribozyme*, 192 F.R.D. at 658 (explaining that "[t]ypicality exists where the injury and the conduct are sufficiently similar") (internal quotation marks omitted). Further, the Court agrees that the Smallen Trust will fairly and adequately represent the class, as the Court is not aware of any potential conflicts between it and the other purported class members. *Id.* at 9-10; *Assad*, WL 3575229, at *3 ("the PSLRA directs courts to limit their inquiry regarding adequacy to the existence of any conflicts between the interests of the proposed lead plaintiffs and the members of the class") (internal quotation marks omitted).

Lastly, the Smallen Trust seeks approval of its selection of Pomerantz LLP as Lead Counsel for the remaining litigation. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v) and the Court's approval, the persons appointed Lead Plaintiff shall select and retain counsel to represent the class. *In re Ribozyme*, 192 F.R.D. at 659. Based upon the Smallen Trust's submissions, Pomerantz LLP appears qualified, experienced, and able to "vigorously conduct the proposed litigation." *Id.*

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Smallen Trust's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel [#15] is **GRANTED**, and the Smallen Trust

is designated as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(i).

IT IS FURTHER **ORDERED** that, pursuant to 15 U.S.C. § 78u–4(a)(3)(B)(v), the Smallen Trust is authorized to retain its current counsel, Pomerantz LLP, to pursue this action as Lead Counsel.

IT IS FURTHER **ORDERED** that the Pension Fund's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel [#17] is **DENIED**.

IT IS FURTHER **ORDERED** that the Scheduling Conference vacated on June 13, 2017, *see Minute Order* [#31], is **RESET** to **November 1, 2017**, at **10:00 a.m.** in Courtroom A-401 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.

IT IS FURTHER **ORDERED** that the parties shall submit their proposed scheduling order pursuant to the District of Colorado Electronic Case Filing ("ECF") Procedures. The parties shall submit the proposed scheduling order no later than **October 26, 2017**.

Dated:  September 6, 2017

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge