**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:17-cv-00474-KLM
      Consolidated with 1:17-cv-00648-KLM

LAWRENCE HENRY SMALLEN AND LAURA ANNE SMALLEN REVOCABLE LIVING TRUST, individually and on behalf of all others similarly situated, and
UA LOCAL 13 PENSION FUND, individually and on behalf of all others similarly situated,

      Plaintiffs,

v.

THE WESTERN UNION COMPANY,
HIKMET ERSEK,
SCOTT T. SCHEIRMAN,
RAJESH K. AGRAWAL, and
BARRY KOCH,

      Defendants.

---

**DEFENDANT BARRY KOCH'S BRIEF IN SUPPORT OF HIS MOTION TO DISMISS
THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ..........................................................................................................................1

BACKGROUND ............................................................................................................................2

ARGUMENT ..................................................................................................................................3

    I.       Count I, For Alleged Violations Of Section 10(b), Should Be Dismissed. .............3

          A.      Count I Should Be Dismissed Because Plaintiff Has Not Sufficiently
                 Alleged That Mr. Koch Made Any False Or Misleading Statements. ..........3

                 1.       Statement 1, Compl. ¶ 395 ................................................................ 3

                 2.       Statement 2, Compl. ¶ 405 ................................................................ 8

                 3.       Statement 3, Compl. ¶ 436 ............................................................. 10

          B.      Count I Also Should Be Dismissed Because Plaintiff
                 Has Not Alleged Facts Giving Rise To A Strong
                 Inference That Mr. Koch Acted With Scienter. .........................................11

    II.      Count II Should Be Dismissed Because Plaintiff Has Not Adequately Pleaded
           Either A Primary Violation Of Securities Laws Or Control Person Status. ..........13

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
    827 F.3d 1229 (10th Cir. 2016) ...............................................................................................13

*City of Philadelphia v. Fleming Cos.*,
    264 F.3d 1245 (10th Cir. 2001) ...............................................................................................13

*In re Gold Res. Corp. Sec. Litig.*,
    957 F. Supp. 2d 1284 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015) ........................13

*Grossman v. Novell, Inc.*,
    120 F.3d 1112 (10th Cir. 1997) ......................................................................................5, 8, 10

*In re Hutchinson Tech., Inc. Sec. Litig.*,
    536 F.3d 952 (8th Cir. 2008) .....................................................................................................9

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)...................................................................................................................3

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
    667 F.3d 1331 (10th Cir. 2012) ...................................................................................4, 5, 8, 10

*Maher v. Durango Metals, Inc.*,
    144 F.3d 1302 (10th Cir. 1998) ...............................................................................................14

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015)...........................................................................................................5, 6

*Rochester Laborers Pension Fund v. Monsanto Co.*,
    883 F. Supp. 2d 835 (E.D. Mo. 2012)..............................................................................8, 9, 10

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A)...............................................................................................................1

# INTRODUCTION

Plaintiff's addition in the Consolidated Amended Class Action Complaint ("Complaint" or "Compl.") of Barry Koch – Chief Compliance Officer of The Western Union Company ("Western Union" or the "Company") from May 2013 until November 2015 – is at best misguided and utterly unwarranted, and at worst entirely frivolous. In support of the assertion of Mr. Koch's personal liability under the securities laws, Plaintiff relies on only three public statements by Mr. Koch, none of which supports a claim under the securities laws:

- "[t]ogether with governments, regulators, law enforcement authorities and financial service companies, we're fully engaged in the fight against money laundering and fraud" (Compl. ¶ 395);

- "[e]nding human trafficking is possible only if everyone steps in and plays a role. We are committed to using the trust, reach and power of our brand along with our Agent network to engage the public and arm them with awareness and resources to spot the signs and report suspect activity" (*id.* ¶ 405); and

- "Western Union is committed to helping protect its customers against fraud and other financial crimes. It's the right thing to do for our customers and for our business" (*id.* ¶ 436).

None of these statements is false, because each constitutes a statement of non-actionable "puffery" that is so vague as to not be susceptible of objective verification. And Plaintiff does not even attempt to plead that Mr. Koch made these statements with knowledge that they were false or recklessly – there is not a single factual allegation in the 176 pages and 580 paragraphs of the Complaint that supports the strong inference of scienter that the Private Securities Litigation Reform Act ("PSLRA") requires. 15 U.S.C. § 78u-4(b)(2)(A). There also is no allegation that Mr. Koch had the authority or control necessary to dictate the contents of any public filings made by the Company or any statements by the CEO or CFOs, as Plaintiff's

allegations of control person liability against him require. As a result, the claims against Mr. Koch must be dismissed.

The separate brief filed by Western Union, Hikmet Ersek, Scott Scheirman, and Rajesh Agrawal (the "Joint Motion to Dismiss") sets forth a multitude of reasons why the Complaint fails to state a claim. (*See* Dkt. No. 54.) Mr. Koch fully supports the Joint Motion to Dismiss and incorporates it by reference. Unlike those Defendants, however, Mr. Koch never signed any of Western Union's securities filings or spoke at or during any Western Union investor conferences or conference calls. He files this separate brief because the allegations against him are so strikingly unsupported and weak that it is important to emphasize how distinctly inappropriate it is for Plaintiff to have joined him in this lawsuit.

## BACKGROUND

Mr. Koch served as the Chief Compliance Officer of Western Union for a little over two years, from May 2013 until November 2015. (Compl. ¶ 29.) Mr. Koch's tenure post-dated all of the conduct cited by the U.S. Department of Justice in its Deferred Prosecution Agreement ("DPA") with Western Union, and also post-dated the bulk of the substantive allegations contained in the Federal Trade Commission's civil complaint against the Company. (*See* Joint Motion to Dismiss at 17 and 21-22.) Plaintiff nevertheless seeks to hold Mr. Koch liable for securities fraud. In Count I, Plaintiff purports to assert claims for violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder. In Count II, Plaintiff purports to assert claims for "control person" liability under Section 20(a) of the Exchange Act. Plaintiff's allegations, however, do not remotely state a claim under either Count. The Complaint against Mr. Koch therefore should be dismissed.

## ARGUMENT

**I.     Count I, For Alleged Violations Of Section 10(b), Should Be Dismissed.**

Plaintiff has failed to allege two essential elements of a claim under Section 10(b): (i) that Mr. Koch made a false or misleading statement of material fact; and (ii) that he did so with scienter. These elements are set out at length in the Joint Motion to Dismiss (at 25-28), and that discussion is incorporated here. One portion of that discussion is particularly relevant with respect to Mr. Koch: a defendant can be primarily liable under Section 10(b) only for his own statements, and not for statements made by anyone else. *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142-43 (2011); *see also* Joint Motion to Dismiss at 28. Therefore, the Complaint must allege specific statements by Mr. Koch that are actionable. As discussed below, Plaintiff fails to satisfy its pleading requirements with regard to any of the three statements made by Mr. Koch.

> **A.     Count I Should Be Dismissed Because Plaintiff Has Not Sufficiently Alleged That Mr. Koch Made Any False Or Misleading Statements.**

The Complaint alleges that Mr. Koch made three statements that give rise to his purported liability. When those statements are analyzed in detail, and in context, it becomes clear that none of them is actionable because none of them is false or misleading.

> **1.     Statement 1, Compl. ¶ 395**

Plaintiff's first challenge is to a statement in a Western Union press release issued on September 17, 2013. (Ex. A.)[1] In the press release, Western Union announced that it was

---

[1] Other than Exhibits A, B, and C attached hereto, all exhibits cited in this brief were submitted with the Joint Motion to Dismiss. This brief also uses the same abbreviations as the Joint Motion to Dismiss.

3

hosting the 8th Annual Anti-Money Laundering, Anti-Fraud and Compliance Conference in Englewood, Colorado, on September 17-18, 2013.  (Compl. ¶ 395.)  The press release described the conference in high-level terms, including that it was "[o]ne of the largest events of its kind, [bringing] together diverse perspectives from industry experts in [AML], compliance and fraud who share best practices with some of Western Union's largest agents" (*id.*), and that speakers would include more than 40 experts, including from the Consumer Financial Protection Bureau, the Department of Homeland Security, the Drug Enforcement Agency, the Federal Bureau of Investigation, the Internal Revenue Service, and law enforcement from across the United States (*see* Ex. A).  The press release also quoted the Chief Compliance Officer (who was not identified by name, even though at the time it was Mr. Koch) as stating that, "[t]ogether with governments, regulators, law enforcement authorities and financial service companies, we're fully engaged in the fight against money laundering and fraud."  (Compl. ¶ 395.)

   ***First***, the statement attributed to the Chief Compliance Officer is classic "puffery" – so generic that it is "incapable of objective verification" – and therefore cannot give rise to liability. *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1340 (10th Cir. 2012).  The Tenth Circuit recently addressed similarly vague representations in a case arising from delays a telecommunications company experienced in integrating its network with that of a competitor, which ultimately resulted in reductions to the company's financial forecasts and a purported $1.76 billion reduction in market capitalization.  *See id.* at 1338, 1340.  The plaintiff in that case alleged that the defendants violated the securities laws in various statements regarding the integration because the defendants purportedly were aware that the integration was not on track,

4

and that in particular the company's customer service would suffer as a result of the delay. *Id.* at 1336-38.

The Court rejected the plaintiff's allegations and dismissed the complaint as to statements that the company was "really focused on integration" and was "focused on insuring" that it maintained its "excellent reputation" for customer service. In so doing, the Court held that such statements were "vague (if not meaningless) management-speak" that could not support a claim for securities fraud. *Id.* at 1340 (holding that statements that "the integration . . . is progressing well," the "overall integration effort is tracking within expectations," and the "overall customer experience is still positive" were similarly non-actionable puffery); *see also Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119, 1121-22 (10th Cir. 1997) (dismissing complaint as to statements that the company had experienced "substantial success" in a particular endeavor, and that the company's merger was "moving 'faster than we thought,'" holding that they were "vague statements of corporate optimism" and accordingly were not actionable).

The statement at issue here, that the Company was "fully engaged" in fighting money laundering and fraud, is similarly "so vague, so lacking in specificity that no reasonable investor could find [it] important" in deciding whether to purchase the Company's stock. *In re Level 3 Commc'ns*, 667 F.3d at 1340 (citation omitted). Accordingly, it is not actionable as a purportedly false or misleading statement. *Id.*[2]

---

[2] The statement is also inactionable because it reflects Mr. Koch's opinions and Plaintiff has not alleged that Mr. Koch did not truly believe what he was saying. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015) (holding in order adequately to challenge statements of opinion in the manner that Plaintiff here attempts, a plaintiff must plead with particularity that the opinion was not "honestly held"); *see also* Joint Motion to Dismiss at 30-33.

5

***Second*,** Plaintiff has failed sufficiently to allege that the statement was actually false. Plaintiff distorts the statement in arguing that it was false because, for instance, Western Union purportedly "did not comply with applicable laws and regulations." (*See* Compl. ¶¶ 303(i)-(v) and (vii) (referenced in *id.* ¶ 396).) But that reads the statement that Western Union was "fully engaged in the fight against money laundering and fraud" (*id.* ¶ 395) as if it were a guarantee of Western Union's compliance with all AML and anti-fraud laws and regulations – which is not what Mr. Koch said and which is not a reasonable interpretation of his statement. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1328 (2015) ("[r]easonable investors do not understand . . . statements as guarantees" when they are not presented as such).

In fact, the Complaint itself indicates that what Mr. Koch said was *true,* that Western Union *was* "fully engaged in the fight against money laundering and fraud." For example, in 2013, when this statement was made, the Company spent over $150 million on compliance and regulatory programs, up from $100 million in 2012. (Compl. ¶¶ 366, 411.) The Company continued significantly to increase its compliance efforts and capabilities during Mr. Koch's tenure at Western Union and under his leadership. In 2014, Western Union employed roughly 1,900 personnel dedicated to compliance, as compared to just 600 just two years earlier, and it spent over $180 million on compliance and regulatory programs. (*Id.* ¶¶ 321, 447.) In 2015, the Company had 2,200 dedicated compliance personnel and spent approximately $200 million on compliance and regulatory problems. (*Id.* ¶ 474.) These facts in Plaintiff's own Complaint show tremendous and growing investment by Western Union in its AML and anti-fraud compliance

functions and are consistent with Mr. Koch's statement that Western Union was "fully engaged in the fight against money laundering and fraud."

***Third***, nothing about Western Union's settlements with the DOJ and FTC undermines the veracity of Mr. Koch's statement.  Mr. Koch did not even join the Company until May 2013 (*id.* ¶ 29), after the violations identified in the DPA had ended, and during the time when the DOJ indicated the Company's CEO, General Counsel, and Chief Compliance Officer displayed an "*ongoing commitment to enhancing* compliance policies and procedures."  (Ex. 1, DPA SOF ¶ 100 (emphasis added); *see also id.* ¶ 100.a-l (describing numerous enhancements made during this period)).)  Moreover, the DPA indicates that in some instances the employees involved in misconduct prior to 2012 were *violating* policies set by the Company's compliance department – none of which would undermine the statement that the Company was fully engaged in fighting money laundering and fraud.  (DPA SOF ¶¶ 66, 80.)  Finally, while some of the allegations in the FTC Complaint regarding insufficient discipline at certain agent locations post-dated 2012 (although the bulk of specific allegations certainly did not), the FTC Complaint did not make any reference to Mr. Koch or his activities at the Company after he joined in mid-2013.  And while the FTC Complaint took issue with the adequacy of compliance measures in the specific instances of discipline that were described, nowhere did it suggest that the Company was not "fully engaged" in fighting against money laundering and fraud.  In fact, like the DPA, the FTC Complaint also acknowledged the improvements that were made by the Company since 2012. (Ex. 2, FTC Compl. ¶¶ 26, 96.)

Further, other than simply alleging that certain consumers filed fraud complaints (*see, e.g.*, Compl. ¶¶ 13-14, 114, 137, 154, 157), the Complaint devotes only three out of its more than

7

580 paragraphs to conduct that occurred during Mr. Koch's tenure (*see id*. ¶¶ 14, 164, 167). These paragraphs, in turn, identify issues with a negligible number of the Company's more than 500,000 agent locations (*id.* ¶ 38) – several of which were actually *terminated* by Western Union during Mr. Koch's tenure (*see id*. ¶¶ 167.a-b). Nor does the Complaint allege with particularity that Mr. Koch had knowledge of issues at any of these particular agent locations or of any alleged fraud complaints related to these agent locations, let alone of any deficient responses to these complaints. This statement therefore supplies no basis for this securities fraud action.

2. **Statement 2, Compl. ¶ 405**

Plaintiff next challenges an inactionable statement of puffery in a press release issued on November 6, 2013, in which Western Union announced that it would be joining the Blue Campaign, an anti-human-trafficking initiative spearheaded by the Department of Homeland Security. (Compl. ¶ 405; *see also* Ex. B.) The press release quoted Mr. Koch as stating that "[e]nding human trafficking is possible only if everyone steps in and plays a role. We are committed to using the trust, reach and power of our brand along with our Agent network ***to engage the public and arm them with awareness and resources to spot the signs and report suspect [trafficking] activity***." (Compl. ¶ 405 (emphasis added).)

This statement is not a comment of any kind about Western Union's business or prospects or its internal compliance program. A comment about a matter of public interest that is not about Western Union or its business cannot form the basis of a securities claim. Moreover, even if it could (and it cannot), such "[v]ague, optimistic statements" cannot violate the securities laws. *In re Level 3 Commc'ns*, 667 F.3d at 1339-40; *see also Grossman*, 120 F.3d at 1119 ("vague statements of corporate optimism" are inactionable); *Rochester Laborers Pension Fund*

8

*v. Monsanto Co.*, 883 F. Supp. 2d 835, 882 (E.D. Mo. 2012) (statements that company was "'committed' to reaching . . . predicted goals" were "soft, puffing statements" (quoting *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 960 (8th Cir. 2008)). That ends the analysis.

Plaintiff also does not allege that this statement was false. The Complaint contains no allegations that the Company was not committed to combatting human trafficking, and it does not say anything at all about the Company's engagement with the public regarding trafficking activity. Indeed, Plaintiff quotes other portions of the press release that provide additional information that *supports* Mr. Koch's statement. For example, Plaintiff alleges that the Acting Secretary of Homeland Security stated that he was "grateful to have the participation of Western Union in this important effort, which will help save lives, protect innocent victims, and prevent this form of modern day slavery." (Compl. ¶ 406.) Plaintiff also quotes another portion of the press release, which indicated that "Western Union and the Western Union Foundation, as a separate 501(c)(3) non-profit charity, have respectively worked and supported several U.S. global organizations to combat human trafficking." (*Id.*)[3]

Despite having alleged information that supports Mr. Koch's statement as being true, Plaintiff nonetheless alleges that it was false "for the reasons stated in [Paragraph] 303(i)-(iii)." (*Id.* ¶ 407.) But those reasons have nothing at all to do with human trafficking or whether Western Union was "engag[ing] the public and arm[ing] them with awareness and resources to

---

[3] Plaintiff also alleges that Mr. Koch was expert in combatting human trafficking, alleging that he "presented on best practices for detecting human trafficking at a conference hosted by the Council of Europe and Organization for Security and Cooperation in Europe on February 17, 2014, and at the 8th Annual European AML Financial Crime Conference, hosted by the An[ti] Money Laundering Professionals Forum, on October 23, 2014." (*Id.* ¶ 247.)

spot the signs [of human trafficking] and report suspect activity."[4]  (Compl. ¶ 405.)  Plaintiff has not sufficiently alleged that this statement was false.

### 3. Statement 3, Compl. ¶ 436

Plaintiff finally challenges an inactionable statement in a press release dated September 17, 2014, announcing Western Union's 9th Annual Consumer Protection Compliance Conference.  (*Id.* ¶ 436; *see also* Ex. C.)  The press release quotes the Chief Compliance Officer, which role Mr. Koch filled at the time, as stating that "Western Union is committed to helping protect its customers against fraud and other financial crimes.  It's the right thing to do for our customers and for our business."  (Compl. ¶ 436.)

Like his other two statements, this statement regarding Western Union's "commit[ment] to helping protect its customers" is a vague positive statement, which constitutes inactionable puffery.  *See supra* at 8-9 (citing *In re Level 3 Commc'ns*, 667 F.3d at 1339-40; *Grossman*, 120 F.3d at 1119; *Rochester Laborers Pension Fund*, 883 F. Supp. 2d at 882).

Further, for the reasons discussed above, Plaintiff has not alleged facts establishing that the statement was false.  To the contrary, the facts alleged in the Complaint support the conclusion that at the time the statement was made, the Company was "committed" to helping protect its customers against fraud and another financial crimes – such as the DOJ's statement that the Company's CEO, General Counsel, and Chief Compliance Officer (*i.e.*, Mr. Koch) had

---

[4] As mentioned above, Paragraph 303 stems from the admissions in the DPA concerning Western Union's AML and anti-fraud compliance, including specific actions by certain Western Union employees and agents prior to December 2012.  None of the admissions in the DPA concerned specific instances of human trafficking, nor do they in any way indicate that, in 2013, Western Union was not trying to educate the public about the signs for human trafficking, as Mr. Koch had stated.

displayed an "*ongoing commitment to enhancing* compliance policies and procedures." (DPA SOF ¶ 100 (emphasis added); *see also, e.g.*, FTC Compl. ¶¶ 26, 96.)

* * *

Because Plaintiff has not sufficiently alleged that Mr. Koch made any false or misleading statements, Count I should be dismissed.

### B. Count I Also Should Be Dismissed Because Plaintiff Has Not Alleged Facts Giving Rise To A Strong Inference That Mr. Koch Acted With Scienter.

Count I also should be dismissed for failure to allege particularized facts that give rise to a strong inference of scienter as required by the PSLRA. The Complaint barely contains any allegations regarding Mr. Koch whatsoever, or even any mentions of his name. It is completely devoid of *any* allegations that might give rise to a reasonable inference of scienter. No facts are set forth in the Complaint to suggest that Mr. Koch did not believe his statements, that Mr. Koch had any information that was inconsistent with his statements, or that could have given him an awareness that his statements were incorrect. Because there are no allegations of any kind that could give rise to an inference of Mr. Koch's scienter, there certainly cannot be allegations that provide the level of particularity required by the PSLRA for pleading scienter. To the contrary, as explained above, the Complaint itself includes allegations that *support* Mr. Koch's statements. Moreover, Mr. Koch's statements about Western Union's commitment to fighting money laundering, fraud, and human trafficking were consistent with his overseeing a major investment in compliance, including tripling the dedicated compliance personnel between 2012 and 2014 and nearly doubling the annual compliance budget. (*Compare* Compl. ¶ 321 *with* ¶ 447 (personnel growth); *compare id.* ¶ 366 *with* ¶ 411 (budget growth).)

11

Plaintiff includes allegations concerning three Board or Compliance Committee meetings that Mr. Koch attended. (*Id.* ¶¶ 240, 242-43.) But none of the information he provided at those meetings is inconsistent with his three challenged statements. First, Plaintiff alleges that on July 17, 2013, two months after starting at the Company, Mr. Koch attended the Compliance Committee meeting and "described a draft risk assessment that would be the 'foundation' for the risk-based AML compliance program of Western Union's core consumer-to-consumer money transfer business." (*Id.* ¶ 240.) Second, Plaintiff alleges that Mr. Koch attended a Compliance Committee meeting on September 9, 2013, at which matters related to the Southwest Border Agreement were discussed. (*Id.* ¶ 242.) Third, Plaintiff alleges that, at a Board meeting on October 11, 2013, Mr. Koch explained in a memorandum to the Board what an AML risk assessment is and that the "*[i]nherent*" "[g]eographic" risk for Western Union's business was "Very High." (*Id.* ¶ 243 (emphasis added) *see* Joint Motion to Dismiss at 50-51.)

These materials have nothing to do with human trafficking, the subject of Mr. Koch's second purportedly false statement. And rather than show that the Company was not "engaged" in fighting money laundering and fraud or "committed" to enhancing its compliance, as stated in Mr. Koch's other purportedly false statements, the Board materials demonstrate that the Company was significantly engaged at high levels in enhancing compliance and was taking considerable efforts in that regard.

The Complaint also fails entirely to supply any motive for why Mr. Koch would have committed fraud. For example, the Complaint does not allege that he engaged in any suspicious trading of Western Union securities or somehow gained any other advantage from lying to investors. The inference that Mr. Koch would have taken the substantial personal risk of

12

overstating the Company's compliance efforts for no personal benefit whatsoever – particularly given the compliance enhancements that were being made during his tenure – makes no sense. *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1239 (10th Cir. 2016) ("the plaintiffs failed to allege facts indicating a motive for securities fraud, which mitigates an inference of scienter").

The Complaint accordingly does not give rise to a strong inference that he intended to defraud investors, much less an inference that is stronger than the alternative inference, *i.e.*, that Mr. Koch did not rush headlong into a scheme to defraud investors within mere months of starting his new position at Western Union (*compare* Compl. ¶¶ 395, 405 *with id.* ¶ 29). The far stronger inference is that Mr. Koch actually did believe that Western Union – and the compliance function he was leading – was "fully engaged in the fight against money laundering and fraud" (*id.* ¶ 395) and that it was "committed" to engaging the public regarding human trafficking issues (*id.* ¶ 405) and to "helping protect [Western Union's] customers against fraud and other financial crimes" (*id.* ¶ 436). Plaintiff has not pleaded a strong inference that Mr. Koch acted with scienter, which requires that Count I be dismissed.

**II.      Count II Should Be Dismissed Because Plaintiff Has Not Adequately Pleaded Either A Primary Violation Of Securities Laws Or Control Person Status.**

To state a claim under Section 20(a) of the Exchange Act, Plaintiff must demonstrate *both* a primary violation of the securities laws *and* that Mr. Koch had control over the primary violator. *See In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1302 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015); *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1270 (10th Cir. 2001). The Complaint fails in both respects.

13

*First*, as demonstrated above and in the Joint Motion to Dismiss, the Complaint fails to demonstrate any primary securities violation.  Plaintiff has not identified a single false or misleading statement made by the Company or by any of the Individual Defendants.  *See* Joint Motion to Dismiss at 28-71.  And even if it had, Plaintiff has failed to plead particularized facts supporting a strong inference of scienter.  *See id.* at 71-96.  The Section 20(a) claim against Mr. Koch should be dismissed on this ground alone.

*Second*, Plaintiff has not alleged that Mr. Koch had control over anyone alleged to have made a false or misleading statement.  In particular, the Complaint does not allege that Mr. Koch exercised control over the other Individual Defendants who were involved in the public filings or spoke on conference calls, including the Company's CEO (Mr. Ersek) or its CFO (in turn Messrs. Scheirman and Agrawal), all of whom were senior to him in the Company.  *See Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304-05 (10th Cir. 1998).  Accordingly, it is not surprising that Plaintiff failed to demonstrate Mr. Koch's control over them, which indeed would make no sense.  Count II should be dismissed.

## CONCLUSION

For the foregoing reasons, Mr. Koch respectfully requests that this Court dismiss the Complaint with prejudice.

Dated: January 16, 2018

/s/ David F. Graham

David F. Graham
Hille R. Sheppard
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603

Holly Stein Sollod
Chuan ("CiCi") Cheng
HOLLAND & HART, LLP
555 17th Street, Suite 3200
Denver, Colorado 80202

*Attorneys for Defendant Barry Koch*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system on January 16, 2018, which sent notification of such filing to the following email addresses:

rusty@shumanlawfirm.com
mgrunfeld@pomlaw.com
ahood@pomlaw.com
jalieberman@pomlaw.com
henryr@rgrdlaw.com
kip@shumanlawfirm.com

                                        /s/ David F. Graham