# Exhibit C



United States Department of Justice

## THE UNITED STATES ATTORNEY'S OFFICE
## SOUTHERN DISTRICT *of* NEW YORK

U.S. Attorneys » Southern District of New York » News » Press Releases

**Department of Justice**

U.S. Attorney's Office

Southern District of New York

FOR IMMEDIATE RELEASE                                    Thursday, May 4, 2017

# Acting Manhattan U.S. Attorney Announces Settlement Of Bank Secrecy Act Suit Against Former Chief Compliance Officer At Moneygram For Failure To Implement And Maintain An Effective Anti-Money Laundering Program And File Timely SARS

**Thomas E. Haider Agrees to a Three-Year Bar from Performing a Compliance Function at a Money Transmitter and to Pay a Civil Penalty of $250,000**

Joon H. Kim, the Acting United States Attorney for the Southern District of New York, and Jamal El-Hindi, the Acting Director of the Financial Crimes Enforcement Network ("FinCEN"), announced today that the United States Department of the Treasury (the "Treasury Department") has settled its claims under the Currency and Foreign Transactions Reporting Act of 1970 ("Bank Secrecy Act" or "BSA") against THOMAS E. HAIDER ("HAIDER"), the former chief compliance officer of MoneyGram International, Inc. ("MoneyGram"). During the relevant time period, MoneyGram operated a money transfer service that enabled its customers to transfer money from one MoneyGram outlet to another. In the settlement – which resolves claims that HAIDER is liable under the BSA for failing to ensure that MoneyGram implemented and maintained an effective anti-money laundering ("AML") program and filed timely suspicious activity reports ("SARs") with FinCEN – HAIDER has agreed to a three-year injunction barring him from performing a compliance function for any money transmitter. HAIDER has also agreed to pay $250,000, and has admitted, acknowledged, and accepted responsibility for, among other things, (1) failing to terminate specific MoneyGram outlets after being presented with information that strongly indicated the outlets were complicit in consumer fraud schemes, (2) failing to implement a policy for terminating outlets that presented a high risk of fraud, and (3) structuring MoneyGram's AML program such that information that MoneyGram's Fraud Department had aggregated about outlets, including the number of reports of consumer fraud that particular outlets had accumulated over specific time periods, was not generally provided to the MoneyGram analysts who were responsible for filing SARs.

The settlement was approved yesterday by U.S. District Judge David S. Doty of the U.S. District Court for the District of Minnesota.

Acting U.S. Attorney Joon H. Kim said: "Compliance officers perform an essential function, serving as the first line of defense in the fight against fraud and money laundering. Unfortunately, as today's settlement shows, Thomas Haider violated his obligations as MoneyGram's chief compliance officer. By failing to terminate MoneyGram outlets that presented a high risk for fraud and to take other actions clearly required of him, Haider allowed criminals to use MoneyGram to defraud innocent consumers. We are committed to working with FinCEN to enforce the requirements of the Bank Secrecy Act and to hold individuals like Haider accountable."

Acting FinCEN Director Jamal El-Hindi said: "FinCEN relies on compliance professionals from every corner of the financial industry. FinCEN and our law enforcement partners need their judgment and their skills to effectively fight money laundering, fraud, and terrorist financing. Compliance professionals occupy unique positions of trust in our financial system. When that trust is broken, it is important that we take action so that the reputations of thousands of talented compliance officers are not diminished by any one individual's outlying egregious actions. We have repeatedly said that when we take an action against an individual, the record will clearly reflect the basis for that action. Here, despite being presented with various ways to address clearly illicit use of the financial institution, the individual failed to take required actions designed to guard the very system he was charged with protecting, undermining the purposes of the BSA. Holding him personally accountable strengthens the compliance profession by demonstrating that behavior like this is not tolerated within the ranks of compliance professionals."

As part of the settlement, filed in federal court in Minneapolis, HAIDER has admitted, acknowledged, and accepted responsibility for the below-described conduct that occurred during the period 2003 through May 23, 2008 (the "Covered Period").

MoneyGram operated a money transfer service that enabled its customers to transfer money to and from various locations in the United States and abroad through MoneyGram's global network of agents and outlets.

HAIDER was MoneyGram's chief compliance officer, and was the most senior MoneyGram employee with direct oversight over MoneyGram's Fraud Department and AML Compliance Department. As such, HAIDER had the authority to implement a policy for terminating or otherwise disciplining MoneyGram agents and outlets. In 2006 and 2007, members of MoneyGram's Fraud Department proposed that MoneyGram implement a policy for terminating or otherwise disciplining agents and outlets that presented a high risk of fraud. A draft policy was provided to HAIDER no later than March 2007. However, MoneyGram's Sales Department objected to a discipline/termination policy for high-fraud agents and outlets, and therefore, during HAIDER's employment at MoneyGram, no such policy was implemented.

In addition, in April 2007, MoneyGram's Fraud Department recommended terminating a number of specific MoneyGram outlets that were located in Canada. To support this recommendation, the Director of Fraud provided HAIDER and other senior managers with specific information on 49

Canadian outlets, which included spreadsheets analyzing the 49 outlets' money transfer activity during the six-month period from September 2006 through February 2007. The spreadsheets revealed that the 49 outlets accounted for approximately 58% of all reported fraud involving money sent through MoneyGram's money transfer system to Canada during this six-month period. The spreadsheets also reflected, among other things, that each of the 49 outlets had characteristics that HAIDER and the other members of the Fraud and AML Compliance Departments who reported to him viewed as strong indicators that an outlet was complicit in consumer fraud schemes. Among the 49 outlets were four outlets that were owned and/or operated by the same individual, James Ugoh. The April 2007 spreadsheets revealed that, during the six-month period, the four Ugoh outlets alone had collectively accumulated 150 consumer fraud reports, totaling more than $300,000 in consumer losses. Ugoh has since pled guilty to various crimes relating to consumer fraud, and he has admitted that almost all of the money his outlets received constituted fraud proceeds.

HAIDER had ultimate authority to terminate agents and outlets because of fraud or AML compliance concerns, but in the face of pushback from the Sales Department did not exercise that authority with respect to the vast majority of the 49 outlets identified in the April 2007 spreadsheets.

By April 2007, HAIDER was aware that MoneyGram's Fraud Department had the ability to aggregate – and had been aggregating – information relating to MoneyGram's agents and outlets, including the number of consumer fraud reports particular outlets had accumulated over specific time periods. However, HAIDER structured MoneyGram's AML program such that this information was not generally provided to the MoneyGram analysts who were responsible for filing SARs. During the Covered Period, there were numerous outlets that the Fraud Department identified as having accumulated a disproportionate number of consumer fraud reports, but for which MoneyGram did not file SARs. In addition, MoneyGram's AML Compliance Department failed to conduct adequate audits of many of those agents/outlets, and certain of the agents were permitted to open additional outlets.

* * *

The Treasury Department filed its complaint in this lawsuit in the United States District Court for the Southern District of New York in December 2014. In March 2015, the parties agreed to transfer the case to the United States District Court for the District of Minnesota, where MoneyGram was headquartered for the period of time relevant to the Government's complaint.

Mr. Kim thanked FinCEN's Enforcement Division, Office of Chief Counsel, and Office of Special Investigations for their extraordinary assistance with this case.

This case has been handled at all times by the Civil Frauds Unit of the United States Attorney's Office for the Southern District of New York. Assistant United States Attorneys Christopher B. Harwood, Jessica Jean Hu, Caleb Hayes-Deats, and Elizabeth M. Tulis are in charge of the case, having been designated as Special Assistant United States Attorneys for the District of Minnesota for that purpose.

**Attachment(s):**

Case 1:17-cv-00474-KLM   Document 56-3   Filed 01/16/18   USDC Colorado   Page 5 of 5

Download Thomas Haider Consent Judgment
Download Thomas Haider Order Settlement Dismissal

**Topic(s):**
Financial Fraud

**Component(s):**
USAO - New York, Southern

**Press Release Number:**
17-124

Updated May 4, 2017

Case 1:17-cv-00474-KLM   Document 56-3   Filed 01/16/18   USDC Colorado   Page 5 of 5