# Exhibit 6

**UNITED STATES OF AMERICA**
**DEPARTMENT OF THE TREASURY**
**FINANCIAL CRIMES ENFORCEMENT NETWORK**

| | |
|---|---|
| **IN THE MATTER OF** | **No. 2003-02** |
| **WESTERN UNION FINANCIAL SERVICES, INC.** | |
| **Greenwood Village, Colorado** | |

**ASSESSMENT OF CIVIL MONEY PENALTY**
**WITH UNDERTAKINGS**

I.   INTRODUCTION

The Secretary of the United States Department of the Treasury has delegated to the Director of the Financial Crimes Enforcement Network ("FinCEN") the authority to determine whether a financial institution has violated the Bank Secrecy Act, 31 U.S.C. §§5311 et seq. and 31 CFR Part 103 thereunder ("BSA"), and what, if any, sanction is appropriate.

In order to resolve this matter, and only for that purpose, Western Union Financial Services Inc. ("Western Union" or the "Company") has entered into a CONSENT TO THE ASSESSMENT OF CIVIL MONEY PENALTY AND UNDERTAKINGS without admitting or denying FinCEN's determinations described in Sections III and IV below, except as to jurisdiction in Section II below, which is admitted. This is a nationwide resolution of Western Union's liability under the BSA for violations arising out of the facts described below.

Western Union's CONSENT TO THE ASSESSMENT OF CIVIL MONEY PENALTY AND UNDERTAKINGS, dated March 6, 2003, is incorporated herein by this reference.

II.   JURISDICTION

Western Union is a money services business, registered with FinCEN under 31 U.S.C. §5330. Western Union, with headquarters in Greenwood Village, Colorado, is a "financial institution" within the meaning of 31 U.S.C. §5312(a)(2) and 31 CFR 103.11(uu).

III.   FINCEN'S DETERMINATIONS

A.   CTR Requirements

The BSA requires financial institutions to file currency transaction reports ("CTRs") for transactions in currency greater than $10,000 in a single day. 31 U.S.C. §5313 and 31 CFR 103.22. Multiple currency transactions occurring at a financial institution must be aggregated if the financial institution has knowledge that they are by or on behalf of any person and result in either cash in or cash out totaling more than $10,000 during one business day. 31 CFR 103.22(c)(2) (the "Aggregation Rule").

over several weeks or months, thus avoiding the identification requirements of the BSA's wire transfer rules.

B.  SAR Requirements

FinCEN regulations requiring money services businesses to file reports of suspicious transactions became effective on January 1, 2002. As of that date, a money services business such as Western Union was required to report any transaction involving or aggregating to at least $2,000 or $5,000,[2] that it "knows, suspects, or has reason to suspect": (i) involves funds derived from illegal activities or is conducted to disguise funds derived from illegal activities; (ii) is designed to evade the reporting or recordkeeping requirements of the BSA (e.g., structuring transactions to avoid currency reporting); or (iii) "has no business or apparent lawful purpose or is not the sort in which the particular customer would normally be expected to engage . . . ." 31 CFR 103.20.

The most prevalent type of suspicious activity that is likely to be attempted through a money services business is structuring. Structuring occurs when a person engages in multiple cash transactions divided into amounts low enough to avoid the filing of a CTR or other BSA reporting or recordkeeping requirement. Structuring is prohibited under 31 U.S.C. §5324 and required to be reported under the BSA's suspicious activity reporting provisions in 31 U.S.C. §5318(g) and 31 CFR 103.20. Structuring can take two basic forms. A person can structure by engaging in multiple transactions on a single day through the same or several agents. A person can also structure by engaging in multiple transactions through the same or several agents over a period of days.

Even apparently isolated instances of structuring can be part of a larger pattern of transactions involving several individuals and financial institutions. While each financial institution would see only one or two suspicious transactions, SARs filed by all the financial institutions enable law enforcement to see a scheme that stretches across multiple financial institutions. This is an issue that has long been important to law enforcement. FinCEN has seen this type of activity conducted by operators of informal value transfer systems that are trying to evade regulatory and law enforcement scrutiny.

FinCEN has determined that Western Union's old procedures and systems were inadequate to comply with the SAR requirements for reporting structuring because they did not identify all multiple transactions conducted by a customer across agents for a single day.[3] Nor

---

[2]  The rule requires reporting of suspicious transactions involving or aggregating more than $2,000 at the "front office" or agent level and at $5,000 at the "back office" level where review of clearance records or other similar records of money orders or traveler's checks is needed to determine if transactions are suspicious. 31 CFR 103.20(a)(3).

[3]  Western Union has a long history of filing SARs voluntarily using its old, partially automated system. Beginning in September 2001, Western Union began to design a new, more automated computer system to monitor transactions for suspicious activity; the system was scheduled to be completed by the end of the calendar year 2001. After the terrorist attacks of September 11, Western Union was involved in an intensive project to aid law enforcement which, among other things, delayed implementation of the new system. Western Union continued to file SARs using a combination of the old and new systems and, in fact, filed about 8,500 SARs in 2002.

did they identify multiple transactions conducted by a customer through the same or different agents over multiple days.  Thus, Western Union failed to file SARs for both types of structured transactions.

In connection with the New York action, Western Union had conducted a review of multiple currency transactions through New York agents during a single day to determine whether SARs should have been filed for cross-agent transactions, and Western Union filed an additional 63 SARs as a result of that review.  FinCEN requested that Western Union perform the same review for the rest of the country and that it file SARs for those transactions that it deemed to be suspicious and for which SARs were not filed previously.  As a result, Western Union has late-filed 662 SARs.

To resolve this action, as discussed in the Undertakings below, Western Union also will review transactions throughout the entire country to identify any additional multiple transactions through the same or different agents over time to determine whether the transactions are suspicious and thus reportable under the BSA, and Western Union will file additional SARs if SARs were not filed previously.

The failure to identify, detect, and report suspicious transactions also affects a financial institution's ability to monitor properly its agents for high-risk business activities, anti-money laundering, and BSA compliance.  To resolve this matter, Western Union has undertaken to enhance policies and procedures to screen potential agents, to monitor agents for compliance with anti-money laundering and BSA compliance policies, and to terminate those agents that Western Union determines to be in chronic violation of its policies and procedures and/or a substantial risk for money laundering.

C.       Failure to File SARs

FinCEN has determined, based on a review by Western Union of its transactions nationwide, that from January 1, 2002, through October 8, 2002, Western Union failed to file 662 SARs for structured transactions in violation of 31 U.S.C. §5318(g) and 31 CFR 103.20.  Western Union has late-filed these SARs.

D.       Willful Violations

FinCEN has determined that Western Union's failures to file SARs were willful.  Western Union failed to establish SAR reporting procedures that would reasonably assure that it could identify and properly report structured transactions.

IV.       CIVIL MONEY PENALTY

---

By September 9, 2002, Western Union had implemented its new automated system nationwide.  That system aggregates transactions by a single customer through any agent location for a single day and across multiple agents and over time.  Thus, Western Union's new system properly aggregates multiple transactions to detect and report structuring.

4

1. By June 30, 2003, Western Union agrees to conduct additional testing of its systems for identifying suspicious activity as follows: Western Union will conduct further research to identify suspected structuring by customers, occurring over multiple days at one or more agents in 2002, to avoid the CTR requirement or the $3,000 funds transfer recordkeeping requirement. Western Union will file SAR-MSBs if additional suspicious activity is identified.

2. Western Union has reviewed all currency transactions from January 1 through October 8, 2002, and identified all multiple transactions for a customer greater than $10,000 during one business day that occurred through different agents. By June 30, 2003, Western Union agrees to file a CTR for any reportable transaction for which it has not already filed a SAR. Western Union has already late-filed all CTRs for those reportable transactions that occurred in New York.

3. Western Union agrees that by June 30, 2003, all its money services business products will be subject to an effective system of review for reporting suspicious transactions under the BSA.

4. By June 30, 2003, Western Union agrees to establish an enhanced nationwide due diligence policy to monitor its agents for BSA compliance. Such policy shall include policies and procedures to determine the money laundering risks that may attend to potential agents when entering into the initial agency agreement; monitoring agents for compliance with Western Union's anti-money laundering and BSA compliance policies; and terminating such agents that Western Union determines to be in chronic violation of Western Union's policy and procedures and/or a substantial risk for money laundering.

Failure to comply materially with the UNDERTAKINGS will constitute a violation of Western Union's CONSENT. In the event that FinCEN determines that a material failure to comply with the UNDERTAKINGS has occurred, FinCEN can take any action it deems appropriate against Western Union (after providing Western Union with an adequate opportunity to respond), including but not limited to, imposing an additional civil money penalty, or ordering other remedial sanctions within its authority.

## VII. RELEASE

Execution of the CONSENT by Western Union and compliance with the terms of the ASSESSMENT OF CIVIL MONEY PENALTY AND UNDERTAKINGS and the CONSENT constitute a complete settlement of civil liability for all violations of the Bank Secrecy Act, and the regulations promulgated thereunder, discussed above, through December 2002.

By: _____//signed//_____     March 6, 2003
    David M. Vogt for CONNIE FENCHEL     DATE
    DEPUTY DIRECTOR--OPERATIONS