# Exhibit 17

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, DC 20549

# FORM 8-K

### CURRENT REPORT
**Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported): January 31, 2014

# THE WESTERN UNION COMPANY
(Exact name of registrant as specified in its charter)

| <u>Delaware</u> | <u>001-32903</u> | <u>20-4531180</u> |
|:---:|:---:|:---:|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

<u>**12500 East Belford Avenue**
**Englewood, Colorado**</u>　　　　　　　<u>**80112**</u>

(Address of principal executive offices)　　　　　　　(Zip Code)

<u>**(866) 405-5012**</u>
(Registrant's telephone number, including area code)

<u>**N/A**</u>
(Former name or former address, if changed since last report.)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (<u>see</u> General Instruction A.2. below):

☐  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 1.01. Entry into a Material Definitive Agreement.**

On January 31, 2014, Western Union Financial Services, Inc. ("WUFSI"), a subsidiary of The Western Union Company (the "Company"), agreed to amend the Settlement Agreement (the "Settlement Agreement") entered into on February 11, 2010, with the State of Arizona (the "State"). Such amendments (the "Amendments") were subsequently approved by the Superior Court of the State of Arizona In and For the County of Maricopa that same day.

The Amendments extend the term of the Settlement Agreement until December 31, 2017, and impose obligations on the Company and WUFSI in connection with WUFSI's anti-money laundering compliance programs and cooperation with law enforcement. In particular, the Amendments require WUFSI to continue implementing the primary and secondary recommendations made by the monitor (the "Monitor") appointed pursuant to the Settlement Agreement related to WUFSI's anti-money laundering compliance program, and include, among other things, timeframes for implementing such primary and secondary recommendations. Under the Amendments, the Monitor may make additional primary recommendations until January 1, 2015, and additional secondary recommendations until January 31, 2017. After these dates, the Monitor may only make additional primary or secondary recommendations, as applicable, that meet certain requirements as set forth in the Amendments. Primary recommendations may also be re-classified as secondary recommendations.

The Amendments provide that if WUFSI is unable to implement an effective anti-money laundering compliance program along the U.S. and Mexico border, as determined by the Monitor and subject to limited judicial review, within the timeframes to implement the Monitor's primary recommendations, the State may, within 180 days after the Monitor delivers its final report on the primary recommendations on December 31, 2016, and subsequent to any judicial review of the Monitor's findings, elect one, and only one, of the following remedies:

(i) assert a willful and material breach of the Settlement Agreement and pursue remedies under the Settlement Agreement, which could include initiating civil or criminal actions; or

(ii) require WUFSI to pay (a) $50 million plus (b) $1 million per primary recommendation or group of primary recommendations that WUFSI fails to implement successfully. There are currently an aggregate of 73 primary recommendations and groups of primary recommendations.

If the Monitor concludes that WUFSI has implemented an effective anti-money laundering compliance program along the U.S. and Mexico border within the timeframes to implement the Monitor's primary recommendations, the State cannot pursue either of the remedies above, except that the State may require WUFSI to pay $1 million per primary recommendation or group of primary recommendations that WUFSI fails to implement successfully.

If, at the conclusion of the timeframe to implement the secondary recommendations, the Monitor concludes that WUFSI has not implemented an effective anti-money laundering compliance program along the U.S. and Mexico border, the State cannot assert a willful and material breach of the Settlement Agreement but may require WUFSI to pay an additional $25 million. Additionally, if the Monitor determines that WUFSI has implemented an effective anti-money laundering compliance program along the U.S. and Mexico border but has not implemented some of the Monitor's secondary recommendations or groups of secondary recommendations that were originally classified as primary recommendations or groups of primary recommendations on the date of the Amendments, the State may require WUFSI to pay $500,000 per such secondary recommendation or group of recommendations. There is no monetary penalty associated with secondary recommendations that are classified as such on the date of the Amendments or any new secondary recommendations that the Monitor makes after the date of the Amendments.

The Amendments also require WUFSI to make a one-time payment of $250,000 and thereafter $150,000 per month for five years to fund the activities and expenses of a money transfer transaction data analysis center formed by WUFSI and a Financial Crimes Task Force comprised of federal and state and local law enforcement representatives, including those from the State. In addition, the Amendments require WUFSI to continue funding the Monitor's reasonable expenses in $500,000 increments as requested by the Monitor.

The changes in WUFSI's anti-money laundering program required by the Settlement Agreement, including the Amendments, and the Monitor's recommendations have had, and will continue to have, adverse effects on the Company's business, including additional costs. Additionally, if WUFSI is not able to implement a successful anti-money laundering compliance program along the U.S. and Mexico border or timely implement a substantial portion

of the Monitor's primary recommendations, each as determined by the Monitor, pursuit by the State of remedies under the Settlement Agreement, including the Amendments, could have a material adverse effect on the Company's business, financial condition or results of operations.

The foregoing summary of the Amendments does not purport to be complete and is subject to, and qualified in its entirety by reference to, the full text of the Amendments, which are filed as Exhibit 10.1 to this current report on Form 8-K and incorporated by reference into this Item 1.01.

**Item 7.01. Regulation FD Disclosure.**

In connection with the Amendments the Company and the State issued a joint press release on February 3, 2014 which is attached hereto as Exhibit 99.1. The information furnished under this Item 7.01, including Exhibit 99.1 attached hereto, shall not be deemed "filed" for purposes of Section 18 of the Securities Exchange Act of 1934, nor shall it be deemed incorporated by reference in any filing under the Securities Act of 1933, except as shall be expressly set forth by specific reference to such filing.

**Item 9.01. Financial Statements and Exhibits.**

| Exhibit Number | Description of Exhibit |
|---|---|
| 10.1 | Settlement Agreement Amendment issued January 31, 2014 by The Honorable Warren Granville, Maricopa County Superior Court Judge. |
| 99.1 | Joint Press Release issued February 3, 2014 by the State of Arizona and The Western Union Company |

## SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**THE WESTERN UNION COMPANY**

| Dated: February 3, 2014 | By: | /s/ Darren A. Dragovich |
|---|---|---|
| | Name: | Darren A. Dragovich |
| | Title: | Assistant Secretary |

# EXHIBIT INDEX

| Exhibit Number | Description of Exhibit |
| --- | --- |
| 10.1 | Settlement Agreement Amendment issued January 31, 2014 by The Honorable Warren Granville, Maricopa County Superior Court Judge. |
| 99.1 | Joint Press Release issued February 3, 2014 by the State of Arizona and The Western Union Company |

**Exhibit 10.1**

| | |
|---|---|
| STATE OF ARIZONA, ex rel.<br>ATTORNEY GENERAL<br>THOMAS C. HORNE,<br><br>           Plaintiff,<br><br>v.<br><br>WESTERN UNION FINANCIAL SERVICES, INC.,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  **SETTLEMENT AGREEMENT AMENDMENT**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Western Union Financial Services, Inc. ("Western Union"), a corporation organized under the laws of Colorado, pursuant to authority granted by its Board of Directors, and the State of Arizona ("State"), through its Attorney General, entered into a Settlement Agreement ("Agreement")[1] on February 11, 2010. This Amendment to the Agreement ("Amendment") supplements and amends the terms of the Agreement. Each party acknowledges that the obligations described below will further their mutual goal that Western Union maintain an effective anti-money laundering ("AML")[2] Program for the Southwest Border Area.

**Recitals**

1. Under paragraph 19 of the Agreement, Western Union agreed to a:

   commitment to full compliance with applicable state law and the Bank Secrecy Act and all of its implementing regulations with respect to the Southwest Border Area. Further, to comply with the BSA, A.R.S. §§ 6-1241 and 13-2317, and this Agreement, Western Union agrees to continue to adhere to Western Union's Bank Secrecy Act ("BSA")/Anti-Money Laundering ("AML") program measures now in existence or in the process of being implemented in the Southwest Border Area, as described in the [KPMG] Report, incorporated by this reference, consistent with the principles set forth in the [Financial Action Task Force Risk-Based Approach to Combating Money Laundering and Terrorist Financing] FATF RBA Guidance relating to money services businesses, and to implement additional program measures recommended by an independent Monitor in the Southwest Border Area (the "Recommendations") to the extent required in the Monitor Engagement Letter.

---

[1] Capitalized terms used in this Amendment shall have the meaning assigned to them in the Agreement.
[2] All references to "AML" are intended to include combating the financing of terrorism ("CFT").

The Agreement required the Monitor to evaluate and confirm whether compliance had been attained in a Final Report to be issued by July 31, 2013.

2.      Western Union has expended significant resources and has made substantial progress in completing the Monitor's Recommendations. The State contends that Western Union had not completed all of the Monitor's Recommendations and had not successfully implemented an AML program for the Southwest Border Area as of July 31, 2013, and that the State is entitled to declare a willful and material breach of the Agreement and pursue the remedies set forth in the Agreement. Western Union disagrees with these contentions.

3.      On June 14, 2013, the parties agreed to toll the time for the Monitor to issue a Periodic Review and Final Report, to extend the time for the Monitor Engagement, and to extend the benefits and obligations of the parties and the Monitor for a period of ninety days, to allow the parties to discuss potential amendment of the Agreement, and enter into this Amendment. On October 25, 2013, the parties agreed to further tolling and extension until December 20, 2013. On December 19, 2013, the parties agreed to further tolling and extension until January 31, 2014.

4.      The parties agree that to achieve their common goal of combating money laundering activities in the Southwest Border Area, it is in the best interests of the parties and the public that the term of the Agreement be extended.

5.      The parties have therefore agreed to the additional obligations imposed by this Amendment and acknowledge that the obligations described below comprise good and valuable consideration for the other party's promises.

**Amendment**

6.      The following provisions are hereby inserted into the Agreement at the end of paragraph 10, among other things altering the timing provisions of paragraph 22 of the Agreement and paragraphs 2 and 10.3 of the Monitor Engagement Letter:

10A To assure that Western Union's Program for the Southwest Border Area complies with the Agreement, including paragraph 19 of the Agreement, Western Union and the Monitor cooperatively developed an Agreed Action Plan, which has been agreed to by the State, in advance of the parties' executing this Amendment. The Agreed Action Plan sets forth certain Recommendations, which are "Primary Recommendations," and describes in detail the measures of success for evaluating whether Western Union has successfully implemented each of the Recommendations. In addition, subsequent to the execution of this Amendment, action plans will be developed for Recommendations classified as Secondary Recommendations, as discussed in paragraph 10B below. The Agreed Action Plan contemplates use of a Gantt chart to track timelines relating to successful implementation of each Primary Recommendation; considers dependent relationships between and among activities to allow Gantt chart style visualization of potential bottlenecks or interferences; and details responsibility for action items by sufficiently competent and experienced staff to successfully implement each Primary Recommendation. The Agreed Action Plan also groups together certain Primary Recommendations that share the same goals and meaningful stages or steps for their implementation, and can reasonably be evaluated as a single Recommendation, as noted in paragraphs 21.6.2, 21.7, and 21.10 below. The Agreed Action Plan includes ten WUBS Recommendations, one IT Recommendation, and one iWatch Training Recommendation as Primary Recommendations.

Acknowledgements:

**On behalf of WESTERN UNION FINANCIAL SERVICES, INC.**

I, John R. Dye, the duly authorized representative of Western Union Financial Services, Inc., hereby expressly acknowledge that:

(1)   I have read this entire Amendment.

(2)   I have had an opportunity to discuss this Amendment fully and freely with Western Union Financial Services, Inc.'s outside attorneys.

(3)   Western Union Financial Services, Inc. fully and completely understands each and every one of the terms of the Amendment.

(4)   The Board of Directors of Western Union Financial Services, Inc. has adopted a resolution reflecting that understanding, a copy of which has been provided to the State.

(5)   Western Union Financial Services, Inc. is fully satisfied with the advice and representation provided to it by its attorneys.

(6)   Western Union Financial Services, Inc. has signed this Amendment voluntarily.


/s/ John R. Dye             DATE:   1/31/2014
John R. Dye
General Counsel for Western Union Financial Services, Inc.

I, Larry A. Hammond, am outside counsel for Western Union Financial Services, Inc. In connection with such representation, I acknowledge that:

(1)   I have discussed this Amendment with my client.

(2)   I believe my client completely understands all of the Amendment's terms.


/s/ Larry A. Hammond            DATE:   1/31/2014
Larry A. Hammond
Osborn Maledon, P.A.
Attorneys for Western Union Financial Services, Inc.




**On behalf of the STATE OF ARIZONA**


/s/ Thomas C. Horne             DATE:   1/31/2014
Thomas C. Horne
Arizona Attorney General


/s/ Eric J. Bistrow             DATE:   1/31/2014
Eric J. Bistrow
Chief Deputy Attorney General