# Exhibit 86

# Western Union Financial Services, Inc.
### Including its Wholly Owned Subsidiary Company,
### Western Union Business Services, Inc.

## Anti-Money Laundering Risk Assessment of the
## Southwest Border Area between
## the United States of America and the United Mexican States

As of July 1, 2013

Document Date September 29, 2013

CONFIDENTIAL

Approved:

October 11, 2013

TABLE OF CONTENTS
SUMMARY OF RISK ASSESSMENT FINDINGS

**PREAMBLE** ..................................................................................................................

**SECTION ONE: INTRODUCTION & APPROACH; METHODOLOGY**..........................

**Chapter One: Introduction and Approach**..................................................................
1.1.1   Introduction..........................................................................................................
1.1.2   Acronyms and Definitions....................................................................................
1.1.3   Risk-based Approach ("RBA")............................................................................
1.1.4   SWB RA Information: Qualitative and Quantitative..............................................
1.1.5   Purpose of SWB RA.............................................................................................
1.1.6   Approach..............................................................................................................
1.1.7   Risk Categories....................................................................................................
1.1.8   Risk Factors.........................................................................................................
1.1.9   Risk Scoring.........................................................................................................
1.1.10  Risk Levels..........................................................................................................
1.1.11  Roles and Responsibilities...................................................................................
1.1.12  SWB RA Governance..........................................................................................

**Chapter Two: Methodology**.........................................................................................
1.2.1 Methodology Summary – Overall Risk Assessment Model ...............................
1.2.2 Risk Evaluation Process........................................................................................
1.2.3 Risk Assessment Scoring......................................................................................

**SECTION TWO: SUMMARY OF RISK ASSESSMENT FINDINGS**

**Chapter One: WUFSI**....................................................................................................
2.1.1 Summary of Risk Assessment Findings ..............................................................
2.1.2 Geographic Risk Summary....................................................................................
2.1.3 Agent Risk Summary.............................................................................................
2.1.4 Consumer Risk Summary......................................................................................
2.1.5 Overall WUFSI Risk Assessment..........................................................................
2.1.6 Enterprise-Wide Integration Risks.........................................................................

**Chapter Two: WUBS**....................................................................................................
2.2.1 Summary of Risk Assessment Findings ..............................................................
2.2.2 Geographic Risk Summary....................................................................................
2.2.3 Agent Risk Summary.............................................................................................
2.2.4 Customer Risk Summary.......................................................................................
2.2.5 Product Risk Summary..........................................................................................
2.2.6 Overall WUBS Risk Assessment...........................................................................

CONFIDENTIAL

**APPENDICES:**

**APPENDIX A**: WUFSI: A DETAILED TREATMENT, ANALYSIS, AND INTERPRETATIONS OF THE QUALITATIVE AND QUANTITATIVE DATA REGARDING THE SWB WU..................................................

**APPENDIX B**: WUBS: A DETAILED TREATMENT, ANALYSIS, AND INTERPRETATIONS OF THE QUALITATIVE AND QUANTITATIVE DATA REGARDING THE SWB WU……………………………..

**APPENDIX C**: TABLE OF AUTHORITIES…………………………………………………………

**APPENDIX D**: GLOSSARY………………………………………………………………………

CONFIDENTIAL

We have developed the following Southwest Border Area Risk Assessment ("SWB RA") which addresses the ML/TF risk of WUFSI and WUBS as it relates to the corridor of transactions between the U.S. and Mexico and Agents which operate in this corridor. This particular corridor is a very high risk geographic area, as assessed by regulators, U.S. government agencies, law enforcement, crime reports, and threat assessments. In fact, transactional activity conducted through Agents operating in this corridor was the subject of investigation by the Attorney General of the State of Arizona. This investigation culminated in a Settlement Agreement ("Agreement") dated February 11, 2010, executed between our Company and the State of Arizona that included the appointment of a Monitor to review and monitor our AML compliance program as well as evaluate our Risk Assessment for the SWB-WU. We at WUFSI cooperated in the Arizona investigation and continue to cooperate with the Monitor in implementing recommendations.

This SWB RA is location specific as it is intended to fulfill our Company's obligation set forth in Paragraph 14 of the Monitor Engagement Letter ("MEL") in connection with continuing legal matters pertaining to the Agreement, Monitor recommendations issued pursuant to the MEL and made applicable to WUBS in a court ruling in September 2012, as well as a draft action plan dated September 17, 2013.

In conjunction with the Monitor's recommendations, we considered known MSB money laundering typologies for the southwest border region of the U.S. as defined in the Agreement ("SWB-WU") throughout the risk assessment process. We found these typologies to be instrumental in compiling our relevant ML/TF risks in the SWB-WU and in assessing the controls we have in place to identify red flags of money laundering.

This SWB RA is limited to the risks associated with money laundering and terrorist financing in the SWB-WU. It does not address credit risk, currency risk, political risk, liquidity risk, foreign investment risk or market risk, although some of these risks were considered for relevant context. For example, political risk was contextually important in considering whether corruption risk was present in a particular country in which the Companies do business. Similarly, while operational risk was not a primary risk that was evaluated in this SWB RA, it was contextually relevant when considering appropriate controls, especially those dependent on automation and technology.

While OFAC risk[2] is not detailed in this document, the Companies have numerous, critical work streams under way to address Monitor Recommendations and other findings relating to the need to strengthen the Companies' OFAC controls in order to address the risk of terrorist financing.

---

[2] OFAC is the Office of Foreign Assets Control in the US Treasury Department. OFAC oversees various US Government economic embargo programs relating to drug trafficking, proliferation of weapons of mass destruction, and terrorism. The Companies have identified, in consultation with the Monitor (who has issued several relevant Recommendations), various areas where enhanced controls are necessary or advisable, and the Companies have projects under way to address them.

iv

2.1.3.1 <u>Inherent Agent Risk</u> - WUFSI has determined that the inherent risk rating for the Agent risks associated with WUFSI's business activities in the SWB-WU is **HIGH**. WUFSI recognizes that although approximately 70% of its Agents are financial institutions, government agencies, and publicly traded companies which may not be individually rated as HIGH, the risk associated with a portion of Agents is sufficiently significant to justify an overall rating of HIGH for the Agent Risk category. WUFSI's Agents are its first line of defense against criminals who attempt to abuse WUFSI's products and services. When Agents do not obtain appropriate consumer information or lack an understanding of compliance, they can be complicit in processing suspicious transactions or willfully blind to potential criminal activity. Consequently, inherent Agent risk can make WUFSI vulnerable to money laundering and other criminal activity. Risks that contribute to the **HIGH** rating include WUFSI's reliance on third parties and entities that contract with the Companies to provide the Companies' products and services to their clients directly or as third party vendors ("Intermediaries") to perform compliance functions and lack of direct control over master-Agent and sub-Agent relationships in the SWB-WU.

2.1.3.2 <u>Mitigating Controls</u> - WUFSI has implemented and continues to proactively design controls to mitigate the inherent Agent risks associated with its business activities in the SWB-WU, and it continues to develop and augment these controls in response to inherent risk changes. WUFSI has planned and/or implemented the following mitigating controls responsive to inherent Agent risk in the SWB-WU: 1) Agent AML compliance training was recently revamped to more specifically address the risk of the SWB-WU and to ensue training requirements are adhered to; 2) management designed and implemented compliance templates and enhanced data integrity ("EDI") rules to more effectively manage Agent compliance activities and to enhance its ability to prevent and detect potentially suspicious activity; 3) robust and proactive Agent compliance reviews are conducted and monitored as more effective oversight techniques; and 4) back office controls have been bolstered to include more thorough Agent onboarding procedures, initial and ongoing due diligence, and Agent compliance program reviews. Lack of uniformity in expectations for mitigating controls at other MSBs and in other geographies could cause Agents and the business to shift to channels other than WUFSI, thereby presenting a significant money laundering risk to a broader spectrum of the financial services industry. By proactively implementing mitigating controls WUFSI acknowledges that it may endure loss in business due to a potential shift by Agents and consumers to alternative channels.

2.1.3.3 <u>Residual Agent Risk</u> - Based on the current state of the AML Program, notwithstanding several notable recent efforts to mitigate Agent risk, WUFSI has determined that the residual risk rating for Agent risk associated with WUFSI's business activities in the SWB-WU is **HIGH**. Certain inherent Agent risks associated with WUFSI's business activities in the SWB-WU have not been fully mitigated by the implementation of controls primarily due to WUFSI's more limited control over sub-Agent relationships. Moreover, several of the planned controls are not yet operational or have not been vetted through an independent assessment and as such their impact on residual directional trends cannot yet be determined. WUFSI does not currently risk

CONFIDENTIAL

processed, as is typical in the MSB industry. In addition, only 1.4% of WUBS account-holding customers are also consumers of WUFSI. Instead of relying on KYC and CDD prior to processing transactions for its consumers, WUFSI analyzes quantitative data such as consumer transaction patterns, and then risk ranks such consumer activity for purposes of comparing the same with related qualitative internal data (regulatory reports, typologies, and crime statistics for the SWB-WU) to assess its consumer risk. Additionally, as is typical of MSBs, many of WUFSI's consumers are either unbanked or underbanked, and may have little or no identification documentation. Other inherent consumer risks considered include government reporting data relating to suspicious activity, cash activity and consumer fraud reporting, and crime statistics in the SWB-WU.

2.1.4.2 Mitigating Controls - WUFSI has successfully implemented controls to mitigate the inherent consumer risks associated with its business activities in the SWB-WU, and it continues to develop and enhance these mitigating controls to respond to inherent risk changes. WUFSI has designed and/or implemented the mitigating controls that address the inherent consumer risk in the SWB-WU, including: 1) AML training for employees and Front Line Associates ("FLA"), 2) RTRA rules that are designed to prevent and detect money laundering and other criminal activity at the point of sale, and 3) back office transaction monitoring rules in its WireWatch and iWatch systems.

2.1.4.3 Residual Consumer Risk - Based on the current state of the AML compliance program, WUFSI has determined that the residual risk rating for consumer risk associated with WUFSI's business activities in the SWB-WU is HIGH. Although current controls have reduced the inherent residual risk from **VERY HIGH** to **HIGH**, certain inherent consumer risks associated with WUFSI's business activities in the SWB-WU have not been fully mitigated by the implementation of controls primarily due to the transactional, rather than account based nature of WUFSI's business activities in the SWB-WU. The implementation of planned controls will cause the residual consumer risk to trend **LOWER**. The most current compliance templates and EDI rules have not yet been implemented at WUFSI's largest master Agent in Mexico. These new templates along with the EDI rules are expected to be implemented by the end of the third quarter of 2013. These new templates and EDI rules, however, do not currently and will not in the near future (a) verify the information provided, (b) prevent multiple consumers from using the same identifying information, or (c) limit activity of consumers whose information was not validated by EDI. In addition, sanction screening and interdiction procedures have some deficiencies which are being addressed and are expected to be resolved in the short term. Residual risk also remains relative to deficiencies in the LPMT program. Additionally, WUFSI's RTRA system does not flag transactions processed for consumers who are the subject of a law enforcement request prior to completion of the transaction, and WUFSI's back office controls do not notify analysts that a consumer has previously been the subject of a law enforcement request. (It should be noted that we are unaware of any MSB whose controls address these last two points.)

*2.1.5   Product Risk Summary*