# EXHIBIT 2



Search DFS | Search

- Home
- **ABOUT US**
- Consumers
- Banking Industry
- Insurance Industry
- Legal
- Reports & Publications

Mission & Leadership | Initiatives | History | News Room | Who We Supervise | Careers with DFS | Contact Us | Procurement

**News Room**

Press Releases - 2018

Press Releases - 2017

Press Releases - 2016

Press Releases - 2015

Press Releases - 2014

Press Releases - 2013

Press Releases - 2012

Press Releases - 2011

Banking Department Press Archive

Insurance Department Press Archive

**Press Release**

January 4, 2018

Contact: Richard Loconte, 212-709-1691

### DFS FINES WESTERN UNION $60 MILLION FOR VIOLATIONS OF NEW YORK'S ANTI-MONEY LAUNDERING LAWS AND FOR IGNORING SUSPICIOUS TRANSACTIONS TO LOCATIONS IN CHINA

*DFS Investigation Finds Western Union Failed to Implement and Maintain Anti-Money Laundering Compliance Between 2004 and 2012*

*Western Union Executives and Managers Willfully Ignored and Failed to Disclose Illegal Conduct by Agents Who Engaged in Fraud and Suspicious Transactions to China Which May Have Aided Human Trafficking*

*DFS Requiring Western Union to Designate a Compliance Point of Contact and Submit Plan to Ensure Adequate Anti-Money Laundering and Anti-Fraud Controls, Including Requiring All Agents to Adhere to U.S. Regulatory and Anti-Money Laundering Standards*

Financial Services Superintendent Maria T. Vullo today announced that Western Union has agreed to pay a $60 million fine as part of a consent order with the New York State Department of Financial Services (DFS) for violations of New York Bank Secrecy Act (BSA) and anti-money laundering laws (AML). An investigation by DFS found that, for more than a decade, Western Union failed to implement and maintain an anti-money laundering compliance program to deter, detect and report on criminals' use of its electronic network to facilitate fraud, money laundering and the illegal structuring of transactions below amounts that would trigger regulatory reporting requirements. In addition, the DFS investigation discovered that senior Western Union executives and managers willfully ignored, and failed to report to DFS, suspicious transactions to Western Union locations in China by several high-volume agents in New York, other states and around the world, including money transfers that may have aided human trafficking. DFS licenses and regulates money transmitters in New York State and is the sole regulator for Western Union in New York State.

"Western Union executives put profits ahead of the company's responsibilities to detect and prevent money laundering and fraud, by choosing to maintain relationships with and failing to discipline obviously suspect, but highly profitable, agents," **said Superintendent Vullo**. "DFS will not tolerate unlawful activity that undermines anti-money laundering laws and endangers the integrity of our financial system."

The DFS investigation found that between at least 2004 and 2012, Western Union willfully failed to implement and maintain an effective anti-money laundering program to deter, detect, and report on suspected criminal fraud, money laundering, and illegal "structuring" schemes. Structuring occurs when a party executes financial transactions in a specific pattern, like breaking up a larger sum into smaller transactions. The purpose of structuring typically is to avoid triggering the obligation of a money transmitter like Western Union to file reports with the federal government required by the BSA, or to avoid the money transmitter's own requirements for providing certain types of identification and other evidence of the legitimacy of the financial transaction.

Western Union has a prior history of compliance issues. In 2002, DFS's predecessor agency, the New York State Banking Department, conducted an examination of the company and determined that it failed to establish effective procedures to monitor its agents, detect suspicious transactions, and file suspicious activity reports. In addition, in a January 2017 agreement with the U.S. Department of Justice, Western Union admitted to federal criminal offenses of willfully failing to implement an effective anti-money laundering program under the Bank Secrecy Act, and aiding and abetting wire fraud.

In today's announcement, DFS said that several Western Union executives and managers knew about or willfully ignored improper conduct involving "NY China Corridor agents." Moreover, even after the U.S. Department of Justice

launched an investigation of Western Union in 2012, and the company became aware of the full scope of the misconduct involving the NY China Corridor Agents, the company waited two years to disclose this information to the DFS.

The NY China Corridor agents include a small business located in Lower Manhattan, one in Sunset Park, Brooklyn, and another in Flushing, Queens. Despite their small size, these agents were some of Western Union's largest agent locations in the world by transaction volume – and thus some of the most profitable for the company.

The Lower Manhattan agent, a small travel agency that offered Western Union money transmission services, processed more than 447,000 transactions totaling more than $1.14 billion between 2004 and 2011. The Sunset Park location appears to be owned by the spouse of the owner of the Lower Manhattan location. The two agents were among the biggest Western Union agents in the entire country.

The Sunset Park location, a small business that sold wireless cellphone services to consumers, and also offered Western Union money transmission services, processed more than 302,000 transactions, totaling more than $600 million, between 2005 and 2011. Almost all of the more than $1.7 billion transfers processed in this time period processed by the Lower Manhattan and Sunset Park agents were transmitted to China. According to federal law enforcement authorities, at least 25 to 30 percent of these transactions showed indications of illegal structuring.

Between 2004 and 2012, the Flushing location processed more than 735,000 transactions, totaling more than $1.2 billion, most of which were sent to China. The sheer number and size of transactions processed by these agents, which were small independent stores each with a small number of employees, stood out as strong indicators of significant money laundering risk.

Western Union had extensive evidence indicating repeated suspicious, improper, or illegal conduct by these agents. The company conducted almost two dozen compliance reviews of the Lower Manhattan and Sunset Park agents during the relevant time period. On each occasion, Western Union compliance staff found clear deficiencies with AML rules and internal company policies. However, senior managers intervened in the disciplinary to push for special treatment for problematic agents that were the highest fee generators, including failing to suspend them. In New York, these tended to be the NY China Corridor agents.

In 2008, Western Union paid the owner of the Lower Manhattan location a $250,000 bonus to renew his contract with the company, despite the agent's numerous compliance violations. The owner of the Lower Manhattan location later admitted to law enforcement agents that he knew that at least some customers used Western Union's money transfer services to pay debts to human traffickers based in China, and structured transactions to avoid identification and reporting requirements and thus evade scrutiny.

Western Union pays agents a commission for each money transfer the agent processes. It may also pay an agent bonuses and other compensation based on transaction volume. The company can terminate or suspend any agent or agent location for a variety of reasons, but especially for compliance reasons.

Western Union, which has more than 2,800 agent locations in New York State, has been licensed by DFS since 1990. In 2016, New York agents processed more than 18 million consumer-to-consumer financial transactions, totaling more than $4 billion. Transactions involving New York agents in 2016 yielded $224 million in revenue for Western Union, resulting in gross profits to the company of approximately $50 million.

Western Union must submit a written plan to DFS within 90 days that is designed to ensure the enduring adequacy of its anti-money laundering and anti-fraud programs. Western Union must also submit a written progress report to DFS detailing the form and manner of all actions taken to secure compliance with the provisions of this Order, and the results of any such actions at six, twelve, eighteen, and twenty-four months from the date of the Consent Order.

A copy of the consent order can be found here.

###

**Department of Financial Services**

| Consumer Quicklinks | Industry Quicklinks | Website | Language Assistance |
| --- | --- | --- | --- |
| File a Complaint | Check Insurance License Status | Accessibility | Español (Spanish) |
| Obtain a Lien Release on a Car | Serve Process | Disclaimer | 中文 (Chinese) |
| File a FOIL Request | File a 90-Day Foreclosure Notice | Privacy Policy | Русский (Russian) |
| Learn about Tenant's Rights | Get Approval for a Title | Site Map | Italiano (Italian) |
| File an External Appeal | Report Fraud | PDF Reader | Kreyòl ayisyen (Haitian-Creole) |
| Report Fraud | Independent Adjusters | | 한국어 (Korean) |
| DMV Insurance Codes | | | Polski (Polish) |

CONNECT WITH US

https://www.dfs.ny.gov/about/press/pr1801041.htm   2/3

**DFS Secure Portal**    

**REGISTER TO VOTE**

Sign up online or download and mail in your application.                          **REGISTER NOW**