# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:17-cv-00474-KLM
        Consolidated with 1:17-cv-00648-KLM

LAWRENCE HENRY SMALLEN AND LAURA ANNE SMALLEN REVOCABLE LIVING TRUST, individually and on behalf of all others similarly situated, and
UA LOCAL 13 PENSION FUND, individually and on behalf of all others similarly situated,

        Plaintiffs,

v.

THE WESTERN UNION COMPANY,
HIKMET ERSEK,
SCOTT T. SCHEIRMAN,
RAJESH K. AGRAWAL, and
BARRY KOCH,

        Defendants.

---

## DEFENDANT BARRY KOCH'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.   Count I Should Be Dismissed Because Plaintiff Has Not
     Sufficiently Alleged That Mr. Koch's Statements Were False or Misleading. ..................... 2

    A.   Statement Regarding Western Union's
          Commitment to Fight Human Trafficking, Compl. ¶ 405. ........................................ 3

    B.   Statement Regarding 2013 Compliance Conference, Compl. ¶ 395. ........................ 5

    C.   Statement Regarding 2014 Compliance Conference, Compl. ¶ 436. ........................ 7

II.  Count I Also Should Be Dismissed Because
     Mr. Koch's Statements Were Non-Actionable "Puffery." ..................................................... 9

III. Count I Also Should Be Dismissed Because Plaintiff Fails
     To Allege Facts Giving Rise To A Strong Inference Of Scienter. ....................................... 11

IV.  Count II Should Be Dismissed As To Mr. Koch Because
     He Was Not A Controlling Person. ...................................................................................... 16

CONCLUSION .......................................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Kinder Morgan, Inc.*,
   340 F.3d 1083 (10th Cir. 2003) .............................................................16

*Anderson v. Spirit Aerosys. Holdings, Inc.*,
   827 F.3d 1229 (10th Cir. 2016) .............................................................14

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
   856 F.3d 605 (9th Cir. 2017) ................................................................14

*City of Philadelphia v. Fleming Cos.*,
   264 F.3d 1245 (10th Cir. 2001) .............................................................14

*Grossman v. Novell, Inc.*,
   120 F.3d 1112 (10th Cir. 1997) .....................................................5, 10, 11

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
   667 F.3d 1331 (10th Cir. 2012) .......................................................10, 11

*Matana v. Merkin*,
   989 F. Supp. 2d 313 (S.D.N.Y. 2013).....................................................10

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   135 S. Ct. 1318 (2015).........................................................................7

*Reese v. Malone*,
   747 F.3d 557 (9th Cir. 2014) ................................................................14

*In re Sanofi Sec. Litig.*,
   155 F. Supp. 3d 386 (S.D.N.Y. 2016)........................................................5

*In re Sturm, Ruger & Co., Inc. Sec. Litig.*,
   2011 WL 494753 (D. Conn. Feb. 7, 2011) ...............................................10

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
   551 U.S. 308 (2007)...........................................................................11

*In re Vale S.A. Sec. Litig.*,
   2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ..........................................10

*Woodward v. Raymond James Fin., Inc.*,
    732 F. Supp. 2d 425 (S.D.N.Y. 2010)...................................................................................10

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...................................................................................14

**Statutes**

15 U.S.C. § 78j(b)...................................................................................2

17 C.F.R. § 240.10b-5...................................................................................2

## INTRODUCTION[1]

Plaintiff's Opposition confirms that the claims against Barry Koch are frivolous. Mr. Koch served as Western Union's Chief Compliance Officer from May 2013 until November 2015 – *after* the entirety of the conduct cited in the DOJ's DPA with Western Union and *after* nearly all of the substantive allegations contained in the FTC's civil complaint against the Company.  (Koch Br. at 2.)  Indeed, of the nearly 600-paragraph Complaint, very few paragraphs are devoted to Mr. Koch.  Plaintiff's 73-page Opposition to Defendants' Motions to Dismiss devotes barely two pages to Mr. Koch's supposedly false statements and never addresses with the particularity required by the PSLRA the grounds for any allegation of scienter against him.

Mr. Koch allegedly made three purportedly false statements during his two-and-a-half-year tenure as Western Union's Chief of Compliance, but none supports a claim for securities fraud.  (Compl. ¶¶ 395, 405, 436.)  These statements were neither false nor misleading – all simply remarked that Western Union was "fully engaged" and "committed" to combatting fraud, money laundering, or human trafficking, which was completely true – and in any event constituted non-actionable "puffery" that is not capable of objective verification.  Nor is there any basis for Plaintiff to assert that Mr. Koch knew or believed that these statements were false. The PSLRA requires Plaintiff to plead specific facts giving rise to a strong inference of scienter

---

[1] Mr. Koch fully supports and incorporates by reference the separate reply brief filed by Western Union and Messrs. Ersek, Scheirman, and Agrawal in support of their motion to dismiss (the "Joint Reply").  Except where noted, capitalized or abbreviated terms have the same meaning as in the Defendants' Brief in Support of their Motion to Dismiss, Dkt. No. 54, or in Mr. Koch's Brief in Support of his Motion to Dismiss, Dkt. No. 56 ("Koch Br.").  Plaintiff's Opposition to Defendants' Motions to Dismiss, Dkt. No. 63, is referred to as the "Opposition" or "Opp."  All emphases contained in this brief with respect to quoted materials are additions unless specifically noted otherwise.

and yet Plaintiff alleges only that Mr. Koch held an important position at the Company and therefore must have had access to information that was contrary to his statements.  That does not suffice to allow this action to continue against him, as cases repeatedly have held.  For all of these reasons, as more fully described below and in Mr. Koch's opening brief, the claims against him should be dismissed.

## **ARGUMENT**

## I.     **Count I Should Be Dismissed Because Plaintiff Has Not Sufficiently Alleged That Mr. Koch's Statements Were False or Misleading.**

Count I should be dismissed because Plaintiff has not alleged a single fact to support its argument that any of Mr. Koch's three statements highlighted in the Complaint were false. (Opp. Br. at 44-45.)  One of his statements broadly referenced the Company's "commitment to" engage the public in combatting human trafficking in connection with Western Union's participation in a U.S. government-sponsored initiative to fight that scourge.  The other two statements were made in routine Company press releases announcing Western Union's annual conferences in 2013 and 2014 on money laundering and fraud – a program at which compliance officers, members of law enforcement, and Western Union agents gathered to compare approaches to solving those problems.  None of these statements addressed in any way past conduct or ongoing investigations and doing so was unnecessary:  that information was utterly irrelevant to the events that were being announced and was not necessary in order to make the statements Mr. Koch did make "not misleading."  15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.

### A.      Statement Regarding Western Union's Commitment to Fight Human Trafficking, Compl. ¶ 405.

Plaintiff's Opposition first addresses the second allegedly false statement made by

Mr. Koch, which appeared in a Company press release issued on November 6, 2013, announcing

that Western Union would be joining the Blue Campaign, an anti-human-trafficking initiative

spearheaded by the U.S. Department of Homeland Security.[2]  (Opp. at 44-45 (citing Compl.

¶ 405); *see also* Koch Ex. B.)  Mr. Koch's statement, in context, was as follows:

> Western Union will provide the Blue Campaign's multilingual training and awareness materials to select Western Union Agent locations in the Southwest border region and other areas in the United States.  These materials highlight the signs of human trafficking and how to accurately report them.  Participating agents will also receive additional training from Western Union on how to detect a potential human trafficking victim and how to involve law enforcement.
>
> "Ending human trafficking is possible only if everyone steps in and plays a role," said Barry Koch, chief compliance officer for Western Union.  "***We are committed to using the trust, reach and power of our brand along with our Agent network to engage the public and arm them with awareness and the resources to spot the signs and report suspect activity***."

(Koch Ex. B.)  Plaintiff argues that this statement was false for a single reason:  because the

Company "was already responding to two different DOJ investigations . . . into China Corridor

agents that facilitated the laundering of hundreds of millions of dollars used for human

trafficking."  (Opp. at 44.)[3]  According to Plaintiff, when making this statement, Mr. Koch was

---

[2] Western Union was the first global payments company to join the Blue Campaign.  (Koch Ex. B.)

[3] Plaintiff is referring to the subpoenas the Company had received from the United States Attorney's Offices for the Eastern District of Pennsylvania and the Central District of California related to two agents who had been arrested for alleged offenses related to money laundering (not human trafficking).  (Opp. at 44; DPA SOF ¶¶ 62, 79; Joint Reply at 17 n.12, 19 (noting that

3

required to disclose that those investigations "subjected the Company to the substantial risk of unprecedented liability." (Opp. at 46.) But the claim of some required additional disclosure is meritless for multiple reasons.

First, Plaintiff never suggests anywhere – either in the Complaint or in the Opposition – that the actual statement made by Mr. Koch was false. Mr. Koch's statement described the Company's commitment to assisting the Department of Homeland Security in the Blue Campaign – a specific initiative to combat human trafficking, and to involve its agents in that effort (*e.g.*, through training agents to "spot the signs and report suspect activity"). (Compl. ¶ 405; Koch Ex. B.) The Department of Homeland Security confirmed as much in the same press release. (Compl. ¶ 406; Koch Br. at 9.) Plaintiff never alleges that Western Union was not in fact committed to participating in this Department of Homeland Security initiative, or to providing training to its agents. Plaintiff says nothing whatsoever about Western Union's role in that initiative. Indeed, Plaintiff **agrees** that the press release "touted the Company's . . . praise from . . . law enforcement agencies in these efforts." (Opp. at 44 n.22.)

Instead, Plaintiff appears to argue that the statement was misleading because it failed to disclose information about supposed known and undisclosed **past** compliance violations. But Western Union's 2013 commitment to help the Department of Homeland Security in its Blue Campaign had nothing whatsoever to do with past compliance successes or failures. Nor was there any aspect of Mr. Koch's statement of commitment to the Blue Campaign that created

---

the two agents whose investigations Plaintiff referenced were terminated in September 2010 and March 2012 (citing DPA SOF ¶¶ 68, 89)).)

some misleading implication by the failure simultaneously to disclose past violations. Accordingly, there was no requirement that he discuss such past violations.  *See Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997) (holding that there is "no duty to disclose . . . information allegedly omitted" where there are no "materially misleading statements that would give rise to such a duty"); *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 403 (S.D.N.Y. 2016) (disclosure of compliance violations required **only** where "necessary to ensure that a corporation's statements are not misleading").

Furthermore, the very information Plaintiff claims was misleadingly withheld by Mr. Koch already was available to the investing public.  Plaintiff ignores that Western Union already had disclosed the existence of the underlying investigations in 2012 – long before this Company press release was issued.  It also had disclosed that there was a substantial risk of liability.  (*See, e.g.*, Ex. 3, 2012 10-K at 38 (disclosing that the Company "***could face significant fines***, damage awards or regulatory consequences" as a result of the investigation, and that those consequences "could have a material adverse effect on the Company's business, financial condition, and results of operations").)  It is simply impossible to misleadingly withhold information that is already known.  And there is no requirement in the securities laws that disclosed information needs to be repeated every time a new press release is issued.

**B.**      **Statement Regarding 2013 Compliance Conference, Compl. ¶ 395.**

Plaintiff's next challenge is to a vague statement made in a September 17, 2013 Company press release announcing the kick-off of the Company's annual conference focused on topics of anti-money-laundering and anti-fraud compliance.  (Opp. at 45.)  Mr. Koch is quoted in that Company press release as stating:

> Together with governments, regulators, law enforcement authorities and financial service companies, we're fully engaged in the fight against money laundering and fraud.

(Compl. ¶ 395; Koch Ex. A.)  Plaintiff offers a single-sentence argument in support of its claim regarding this statement:  that it was "misleading absent disclosure of the fact that government investigations that were pending at the time posed the high risk of substantial liability for Western Union's compliance failures."  (Opp. at 45.)  Again, this position is without merit.

First, once again, there are no allegations that the actual statement made by Mr. Koch was false when made.  Plaintiff does not claim that in 2013 Western Union's top executives were not "fully engaged" on the subjects of money laundering or fraud, or present any particularized facts to the contrary.  Indeed, as previously noted (Koch Br. at 7), the DOJ's DPA praised the Company, including Mr. Koch, for "ongoing commitment to enhancing compliance policies and procedures" during this very period.  (DPA SOF ¶ 100; *see also* Opp. Ex. 1, NYDFS Consent Order, ¶¶ 63-64 (recognizing that Western Union "has made and continues to make substantial contributions to law enforcement efforts through its continuing cooperation with law enforcement").)

Second, Mr. Koch's statement was not misleading merely because it did not disclose and gratuitously opine on the pending investigations.  Once again, there is simply no misleading implication from the statement having anything to do with these matters.  Mr. Koch did not, for example, say anything that remotely suggested whether he believed there was or was not "a high risk of substantial liability" from the investigations.  Instead, Plaintiff inappropriately seeks to use the mere existence of the statement as a basis for requiring unrelated and legally unrequired disclosures.  Moreover, as noted above, the existence of government investigations already had

been disclosed, so that information already was part of the mix of information available to investors.  And Mr. Koch was simply expressing his opinion that, *as of 2013*, the Company was "engaged in" fighting money laundering and fraud.  Plaintiff's own allegations regarding compliance spending demonstrate that the Company was significantly investing in its compliance during Mr. Koch's tenure.  (*See* Koch Br. at 6 (citing Compl. ¶¶ 366, 411, 321, 447, 474).)

Finally, as discussed in Mr. Koch's Opening Brief, Plaintiff has not alleged that Mr. Koch did not actually believe the opinion he was espousing, which is an independent reason the statement is inactionable.  (*See* Koch Br. at 5 n.2 (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015)).)  Plaintiff does not bother to respond to this argument, which also requires dismissal.

### C.     Statement Regarding 2014 Compliance Conference, Compl. ¶ 436.

Plaintiff's final challenge is to a statement in a September 17, 2014 Company press release announcing the Company's next annual conference focused on the topics of anti-money laundering and anti-fraud compliance.  (Opp. at 45-46.)  Mr. Koch is quoted as saying:

> Western Union is committed to helping protect its customers against fraud and other financial crimes.  It's the right thing to do for our customers and for our business.  We believe the investments we're making now are the right ones for the long-term health of the company.

7

(Compl. ¶ 436 (quoting Koch Ex. D).)[4]  Plaintiff again argues that this statement was false and misleading because it "fail[ed] to disclose current and past compliance failures."  (Opp. at 45.)

Plaintiff's allegations concerning the 2014 conference press release should be dismissed for all the same reasons cited above with respect to the Company's 2013 press release.  Plaintiff provides no particularized facts indicating that the statement attributed to Mr. Koch was untrue or that he did not actually believe the sentiments he expressed. In fact, the allegations in the Complaint make clear that Western Union, during Mr. Koch's tenure, *was* making very substantial compliance investments.  (*See* Koch Br. at 6 (citing Compl. ¶¶ 366, 411, 321, 447, 474).)  Indeed, the Complaint acknowledges that, by 2014, Western Union employed roughly 1,900 compliance personnel, compared to 600 just two years earlier, and spent over $180 million on compliance and regulatory programs.  (*See* Compl. ¶¶ 321, 447.)  Nonetheless, as with the 2013 press release, Plaintiff argues that the Company's 2014 press release is misleading because it failed to disclose the pending investigations and evaluate their risk.  But there was nothing *misleadin*g in the slightest about what was actually said, which, once again, was entirely unrelated to the investigations.

Plaintiff also makes the meritless assertion that the 2014 statement "tout[ed]" the Company's reasons for compliance expenditures while failing to disclose "the true reason for its

_____

[4] Koch Exhibit D, filed herewith, supersedes Koch Exhibit C, which was inadvertently included with the Koch Brief.  All references to Koch Exhibit C in the Koch Brief should instead refer to Koch Exhibit D.

increased compliance costs."  (Opp. at 45; *see also id.* at 46.)  All the statement says about the

reasons for the Company's investments in compliance is (1) the investments were the "right

thing to do" for the Company's customers and its business and (2) they were the "right ones for

the long-term health of the company."  Plaintiff does not explain why this was false or

misleading.  (*See* Joint Reply at 56 n.38 (noting that the reasons Plaintiff argues were omitted

were in fact ***disclosed***).)[5]

## II.   Count I Also Should Be Dismissed Because Mr. Koch's Statements Were Non-Actionable "Puffery."

Each of the statements that form the basis for Plaintiff's claims against Mr. Koch

suggests that Western Union was "committed to" or "engaged in" efforts to combat human

trafficking, money laundering, or fraud.  (*See* Compl. ¶¶ 405, 395, 436.)  As explained in

Mr. Koch's Opening Brief, such statements are inherently vague, unquantified positive

statements that are "incapable of objective verification" – *i.e.*, the classic definition of puffery.

---

[5] In a one sentence footnote (Opp. at 45 n.23), Plaintiff takes issue with portions of the Company's 2013 and 2014 press releases that were not attributed to Mr. Koch:  (1) that Western Unions' employees are "dedicated to compliance, fighting fraud and helping to protect and empower consumers around the globe" and "[t]his dedication expands to those who are on the frontlines" at Western Union's agent locations (Compl. ¶ 395), and (2) that "Western Union actively educates its customers about fraud and provides them with tips and information they can use to help protect themselves" (*id.* ¶ 436; Ex. D).  Plaintiff makes no allegation that Mr. Koch made, or was in any way responsible for, these statements.  (*See, e.g.*, Compl. ¶ 395 (attributing statement to "Western Union").)  Moreover, neither supports a claim for securities fraud as the first statement is a classic vague, positive statement of puffery and because Plaintiff does not allege a single fact to suggest that either statement was not true at the time.  That Western Union failed to discipline certain agents in the past says nothing about the general dedication of Western Union's employees, and Plaintiff alleges no facts to suggest that Western Union failed to educate its customers about fraud.  Neither of these statements has anything to do with the past compliance violations at issue in the Regulatory Settlements.

Indeed, terms like "commitment" and "engaged" were never specified or defined, and cover a vast, ambiguous range of potentially different meanings.  The claims against Mr. Koch related to all three of the alleged statements are therefore barred by well-established case law that makes "puffery" non-actionable under the securities laws.  (Koch Br. at 4-5, 8-9 (citing, *e.g.*, *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1340 (10th Cir. 2012) (statements including that the company was "really focused" on a particular goal were immaterial puffery); *Grossman*, 120 F.3d at 1119 ("vague statements of corporate optimism" are inactionable)).)[6]

Plaintiff's sole response to Mr. Koch's "puffery" argument is to assert in a footnote that the issue was addressed elsewhere.  (Opp. at 46 n.24.)  But the only discussion of "puffery" (*id.* at 34-38) does not reference Mr. Koch's statements and does not even attempt to explain how these specific statements were not so vague as to be immaterial.  Rather, Plaintiff generically asserts that statements that constitute "puffery" may nevertheless be actionable if "the speaker knew at the time the statements were made that they were untrue or had no reasonable basis in fact."  (*Id.* at 36.)  This argument fails both factually and legally.  Factually, there are simply no particularized facts showing that Mr. Koch knew that any of his statements were false.  To the

---

[6] *Matana v. Merkin*, 989 F. Supp. 2d 313, 327 (S.D.N.Y. 2013) (statement that hedge fund was "committed to managing risk" was inactionable puffery); *In re Sturm, Ruger & Co., Inc. Sec. Litig.*, 2011 WL 494753, at *5 (D. Conn. Feb. 7, 2011)  (statement that "[e]mployees are fully engaged" was inactionable puffery); *In re Vale S.A. Sec. Litig.*, 2017 WL 1102666, at *22 (S.D.N.Y. Mar. 23, 2017) (statement that company was "committed to" safety is "a general, airy statement of commitment routinely found to constitute non-actionable puffery" (collecting cases)); *Woodward v. Raymond James Fin., Inc.*, 732 F. Supp. 2d 425, 434-35 (S.D.N.Y. 2010) (statement by officers of financial services holding company concerning "commitment to risk management and conservative lending practices" deemed "nothing more than a general platitude that accompanies nearly every press release or public statement issued by a financial institution" that "define[d] the term 'puffery'").

contrary, as noted, Western Union's compliance undertakings grew substantially during Mr. Koch's tenure, and the Company's commitment to compliance during and after this time was acknowledged by the DOJ at the time of the DPA.[7]  And Plaintiff's argument is also legally incorrect, as discussed in the Joint Reply.  (Joint Reply at 43-45.)  To the contrary, statements of puffery are, by definition, immaterial *as a matter of law* because, regardless of alleged falsity and regardless of the speaker's knowledge, a reasonable investor would not consider the statements at issue "important in determining whether to buy or sell stock."  *In re Level 3*, 667 F.3d at 1339 (quoting *Grossman*, 120 F.3d at 1119).

### III.    Count I Also Should Be Dismissed Because Plaintiff Fails To Allege Facts Giving Rise To A Strong Inference Of Scienter.

Plaintiff's Opposition also serves to highlight the Complaint's failure to allege facts that give rise to a strong inference of scienter.  A strong inference of scienter typically requires a plaintiff to plead particular facts showing a "mental state embracing intent to deceive, manipulate, or defraud, or recklessness."  *In re Level 3,* 667 F.3d at 1343.  Such an inference, moreover, must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id*. (quoting *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 324 (2007)).

Here, Plaintiff presents no facts with respect to Mr. Koch – either in the Complaint or in the Opposition – that even come close to establishing a strong inference of scienter.  Plaintiff

---

[7] The Arizona Attorney General's office similarly recognized the Western Union "Southwest AML Compliance Program [as] a model for others in the industry."  *See* https://www.azag.gov/ press-release/update-western-union-anti-money-laundering-settlement-agreement.

does not allege a single fact to suggest that Mr. Koch did not honestly believe what he said – that the Company was "committed to" or "engaged in" combatting human trafficking, money laundering, and fraud during his tenure as Chief Compliance Officer.

Nor has Plaintiff alleged any facts supporting the notion that Mr. Koch had some knowledge of **undisclosed** compliance violations at the time he made the statements – to the contrary, the facts Plaintiff has alleged provide **support** for the three statements Mr. Koch made. For instance, in its Opposition, Plaintiff mentions two Board meetings that Mr. Koch attended (the meetings on July 17, 2013 and October 11, 2013).  (Opp. at 54-55.)  As discussed in the Joint Reply, the materials for those Board meetings (1) discussed the "inherent risk" associated with operating in the Southwest Border region, not a failure to comply with any laws, and (2) noted the need for "further improvement" in certain limited areas, but said nothing about any failure to comply with the law.  (Joint Reply at 24-26 (quoting Exs. 79, 86).)  If anything, the Board materials demonstrate that the Company was working diligently to identify areas of risk and areas where its efforts could benefit from further improvement.  This **supports** Mr. Koch's statements that the Company was "committed to" and "fully engaged in" fighting money laundering and fraud.

Plaintiff also argues that Mr. Koch received (1) a report of potential fraud associated with an entity in India in July 2013 and (2) reports of issues with recording outgoing customer information regarding a particular agent in September 2013.  (Opp. at 56-57.)  But as discussed in the Joint Reply (at 29-31), these materials do not show any knowledge of compliance violations – and, if anything, demonstrate that the Company **took action** to escalate the issues

related to the agent associated with the fraud reports and to solve the problem regarding information recording.  This further supports the accuracy of Mr. Koch's statements regarding Western Union's commitment to compliance – these materials certainly do not support a finding of scienter.

Wholly apart from Plaintiff's failure to plead facts giving rise to a strong inference of scienter, Plaintiff has made no attempt to meet its burden of explaining why an inference that Mr. Koch sought to deceive investors is the most cogent and compelling inference to be drawn from the facts.  Indeed, even if Plaintiff had successfully alleged facts regarding Mr. Koch's knowledge, it is far more cogent and compelling to believe that Mr. Koch simply did not think additional information about past conduct or about regulatory scrutiny being given to that past conduct (which had already been disclosed in Western Union's 2012 Form 10-K) was remotely relevant to the matters being discussed in Company press releases about support for government anti-human trafficking programs or an annual event addressed to compliance professionals.

Mr. Koch also had no motive to commit fraud.  Plaintiff does not and cannot point to any stock sales by Mr. Koch.  All Plaintiff can say is that it is not surprising Mr. Koch did not engage in any stock sales, because he "was employed at the Company for only 2.5 years, [and] would not have accumulated the same amount of stock as longstanding executives."  (Opp. at 70 n.34.) This statement concedes the point.  The lack of any alleged stock sales means that such sales did not provide him with a motive to deceive investors during the Class Period.  And Plaintiff has not attempted to plead any other motive for Mr. Koch.

In light of the foregoing, Plaintiff is left only with a legally foreclosed argument to try to bolster a claim of scienter:  solely because of Mr. Koch's position at the Company, he had "reason to know" of alleged compliance violations later described in the Regulatory Settlements. (Opp. at 62.)  The law is crystal clear, however, that Mr. Koch's position, without more, cannot support an inference of scienter.  *See, e.g., Anderson v. Spirit Aerosys. Holdings, Inc.*, 827 F.3d 1229, 1246 (10th Cir. 2016); *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1263-64 (10th Cir. 2001).[8]

Plaintiff attempts to sidestep this controlling precedent by arguing that Mr. Koch "had an even stronger reason to know" about the violations at issue in the Regulatory Settlements than the other Defendants because of his role as Chief Compliance Officer.  This is an entirely conclusory allegation, and is not supported by a single particularized allegation or fact regarding information he personally received.[9]  To the contrary, all of the violations at issue in the DPA, which in some cases involved Company employees failing to "follow Western Union's internal

---

[8] Plaintiff cites *Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014), overruled on other grounds by *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017), for the proposition that "overs[eeing] [the] company's" operations is sufficient to allege scienter (Opp. at 62), but, as Plaintiff's own cases demonstrate, that is not an accurate characterization of that case or of the law.  (*See* Joint Reply at 79 & n.55 (discussing cases cited Opp. at 61-62).)  Plaintiff also contends that *Anderson* and *Zucco Partners* are distinguishable from this case because those cases refused to infer knowledge based on the defendants' positions in the company on the ground that the "underlying data was not itself clear."  (Opp. 62 n.28.)  That is a mischaracterization of the plain holdings of those cases, which was that allegations regarding what a defendant "must have known" based on his position at the company are insufficient to satisfy the PSLRA.  *Anderson*, 827 F.3d at 1246; *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998 (9th Cir. 2009).

[9] Indeed, the Complaint contains no particularized facts, from any source, that Mr. Koch was part of the legal defense team dealing with the investigations or personally received reports from that team.

procedures" regarding discipline and termination (DPA SOF ¶ 80), occurred well before Mr. Koch's tenure at the Company – in some cases almost 10 years earlier. And the FTC's allegations with respect to Mr. Koch's tenure are limited to "certain cases" of inadequate agent discipline. (FTC Compl. ¶ 26.) Mr. Koch is not alleged to have had any knowledge of these purported violations. (*See* Joint Reply at 29.)[10]

Finally, even if Mr. Koch had such purported knowledge (and there is no allegation that he did), it would be irrelevant to his scienter in making the three, innocuous statements he made – none of which had anything to do with the presence or absence of compliance violations. And Plaintiff makes no attempt to present any particularized facts showing that Mr. Koch somehow *intended* to deceive when he made the three statements, or knew that some deception would result.

*   *   *

For all of these reasons – because Plaintiff has failed to show that Mr. Koch's statements were false, because those statements are non-actionable "puffery," and because Plaintiff has failed to establish a strong inference of scienter – Count I of the Complaint should be dismissed with respect to Mr. Koch.

---

[10] Plaintiff additionally argues that Mr. Koch knew about the violations and alleged violations as a result of the Company's responses to pending government investigations, but Plaintiff does not provide a single particularized fact to support this. Moreover, not all of the investigations had even launched by the time of Mr. Koch's first statement (*see* Compl. ¶¶ 268, 272), and he left more than a year before they were concluded.

15

**IV.      Count II Should Be Dismissed As To Mr. Koch Because He Was Not A Controlling Person.**

Plaintiff has not alleged any primary violation of the securities laws against any of the

Defendants for the reasons explained in the Joint Reply.  Accordingly, Plaintiff's claim under

Section 20(a) should be dismissed.  (Joint Reply at 84.)  Count II also should be dismissed as to

Mr. Koch because Plaintiff has not alleged that he had "control **over the primary violator**," as it

concedes it must.  (Opp. at 70 (quoting *Adams v. Kinder Morgan, Inc.*, 340 F.3d 1083, 1107

(10th Cir. 2003)).)  Plaintiff makes no attempt to show that Mr. Koch controlled either

Mr. Ersek, Mr. Scheirman (during the time he overlapped), or Mr. Agrawal.  In fact, the

Complaint does not allege that Mr. Koch had control over the other Defendants or over Western

Union as a corporate entity, which Plaintiff conceded is dispositive of a Section 20(a) claim.

Plaintiff attempts to assert that, as Chief Compliance Officer, it can be inferred that

Mr. Koch had at least indirect control over how the Company represented its compliance

practices to investors.  Plaintiff analogizes to the role of a corporate CFO, who has at least

indirect control over a Company's financial reporting.  (Opp. at 71 (citing *Adams*, 340 F.3d at

1109).)  This analogy does not work.  A corporate CFO signs the company's financial statements

and under Sarbanes-Oxley is required to sign a certification as to the accuracy of the financial

statements – a certification that is published in the Company's annual report on Form 10-K filed

with the SEC.  *See Adams*, 340 F.3d at 1106.  Mr. Koch, on the other hand, did not sign any

statements or reports filed with the SEC or other regulators.  Mr. Koch also is not alleged to have

been in any way connected to any of the statements at issue, other than the three he allegedly

made.  Finally, that Mr. Koch reported to the Board's Compliance Committee on his portfolio of

16

responsibilities (Opp. at 71) does not establish his control over any of the other Individual

Defendants and their respective statements.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Koch respectfully requests that this Court dismiss the

Complaint with prejudice.

Dated:  June 5, 2018

*/s/ David F. Graham*

David F. Graham
Hille R. Sheppard
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603

Holly Stein Sollod
Claire E. Wells Hanson
HOLLAND & HART, LLP
555 17th Street, Suite 3200
Denver, Colorado 80202

*Attorneys for Defendant*
*Barry Koch*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system on June 5, 2018, which sent notification of such filing to the following email addresses:

rusty@shumanlawfirm.com
mgrunfeld@pomlaw.com
ahood@pomlaw.com
jalieberman@pomlaw.com
migross@pomlaw.com
henryr@rgrdlaw.com
kip@shumanlawfirm.com

/s/ *David F. Graham*

*Attorney for Defendant Barry Koch*