# EXHIBIT A

2018 WL 4616356
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

SOCIÉTÉ GÉNÉRALE SECURITIES SERVICES, GBMH, Lead Plaintiff,
v.
CATERPILLAR, INC., et al., Defendants.

Case No. 17 cv 1713
|
Signed 09/26/2018

**Attorneys and Law Firms**

Patrick Vincent Dahlstrom, Louis Carey Ludwig, Pomerantz LLP, Frank Anthony Richter, James E. Barz, Robbins Geller Rudman & Dowd LLP, Chicago, IL, Christopher F. Moriarty, Gregg S. Levin, James M. Hughes, Motley Rice LLC, Mount Pleasant, SC, for Lead Plaintiff.

Mark Robert Filip, Kirkland & Ellis LLP, Chicago, IL, James P. Gillespie, Kenneth Winn Allen, Kirkland & Ellis LLP, Washington, DC, for Defendants.

### MEMORANDUM OPINION AND ORDER

SHARON JOHNSON COLEMAN, United States District Judge

 *1  Plaintiff, Société Générale Securities Services, GbmH, ("Société Générale") filed a two-count Amended Class Action Complaint [29], alleging securities fraud in violation of section 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Defendants Caterpillar Inc., James B. Buda, Jananne A. Copeland, Bradley M. Halverson, Douglas R. Oberhelman, and D. James Umpleby III (collectively "Caterpillar") move to dismiss the Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [34]. For the reasons stated herein, this Court grants the motion and dismisses the Amended Complaint without prejudice.

**Background**

The purported class of plaintiffs consists of those individuals and entities that acquired Caterpillar common stock between February 12, 2013, and March 1, 2017. Defendant Caterpillar designs, manufactures, and markets construction, mining, and forestry machinery. Caterpillar also distributes its products globally through a network of dealers. Caterpillar is currently headquartered in Peoria, Illinois. Its stock is publicly traded on the New York Stock Exchange.

The instant lawsuit stems from Caterpillar's creation of a Swiss subsidiary, Caterpillar S.A.R.L. ("CSARL") in 1999, through which Caterpillar paid an effective tax rate of 4-6% to the Swiss government. Société Générale alleges that CSARL lacked a proper business purpose and thus was not a legitimate tax reduction plan. A former employee filed a whistleblower lawsuit that was resolved through a settlement. After that lawsuit, however, the IRS, Congress, and other government agencies began investigating Caterpillar's tax position.

According to Société Générale, Caterpillar made materially false and misleading statements and omitted material information regarding the substantial risk to Caterpillar's tax position and the extent of the investigation. Société Générale further asserts that Caterpillar falsely represented that it was cooperating with the investigations. Société Générale claims several statements and omissions by Caterpillar were materially false or misleading, including: [1]

- February 13, 2013, Caterpillar filed a Form 10-K for 2012 with the SEC that stated: "[o]ur consolidated financial statements are prepared in accordance with GAAP."

- the 2012 Form 10-K also stated: "The IRS is currently examining our U.S. tax returns for the years 2007 to 2009. In our major non-U.S. jurisdictions, tax years are typically subject to examination for three to eight years. In the opinion of management, the ultimate disposition of these matters will not have a material adverse effect on our consolidated financial position, liquidity or results of operations."

- Caterpillar's Form 10-Q filed May 2, 2013, August 2, 2013, November 1, 2013, each stated: "[t]he financial statements have been prepared in conformity with generally accepted accounting principles in the United States of America (U.S. GAAP) and pursuant

to the rules and regulations of the Securities and Exchange Commission."

**\*2** • Form 10-K filed February 18, 2014 stated: "Our consolidated financial statements are prepared in accordance with GAAP[,]" and "The IRS is currently examining our U.S. tax returns for 2007 to 2009 including the impact of a loss carryback to 2005.... In our major non-U.S. jurisdictions, tax years are typically subject to examination for three to eight years. In the opinion of management, the ultimate disposition of these matters will not have a material adverse effect on our consolidated financial position, liquidity or results of operations."

• On March 31, 2014, Caterpillar issued a press release titled "Caterpillar Executive to Testify Before U.S. Senate Subcommittee About Company's Business Structure: Company acts ethically, complies with tax law and pays its taxes." That document stated: " 'Caterpillar takes very seriously its obligation to follow tax law and pay what it owes,' said Julie Lagacy. '... Caterpillar's philosophy is that our business structure drives our tax structure. We comply with the tax laws enacted by Congress, by the states and by all of the many jurisdictions in which we conduct business.' "

• April 1, 2014, Julie Lagacy, Caterpillar's Vice President of Finance Services Division, testified before the Senate Subcommittee on Homeland Security and Governmental Affairs, stating:

  • "We want to emphasize that Caterpillar has fully complied with U.S. tax law with respect to the restructuring and transactions that you have asked us to discuss today."

  • "CSARL is no mere shell, but rather a major operating company employing hundreds of personnel in Geneva, including many of the people who perform the strategically critical work of interfacing with dealers in non-U.S. markets."

  • "Caterpillar's in-house tax professionals and outside advisors manage tax risk every day, and all remain convinced that the restructuring and subsequent transaction comply with the tax code and case law dealing with the need for transactional form to comport with transactional substance. Caterpillar has never had any reservation about any fundamental 'substance' issue relating to CSARL's purchases and sales of replacement parts...."

  • "Caterpillar further notes that the restructuring was in no way a tax shelter and was not originated as an idea by PricewaterhouseCoopers."

• Caterpillar's Form 10-Q from May 2, 2014, August 1, 2014, October 31, 2014 that reported: "[t]he financial statements have been prepared in conformity with generally accepted accounting principles in the United States of America (U.S. GAAP) and pursuant to the rules and regulations of the Securities and Exchange Commission[,]" and "[t]he IRS is currently examining our U.S. tax returns for 2007 to 2009 including the impact of a loss carryback to 2005 .... In the opinion of management, the ultimate disposition of these matters will not have a material adverse effect on our consolidated financial position, liquidity or results of operations."

• Caterpillar's Form 10-K filed February 17, 2015, May 1, 2015, July 31, 2015, October 30, 2015, February 16, 2016, Form 10-Q May 2, 2016, Form 10-Q August 3, 2016, Form 10-Q November 2, 2016, February 15, 2017, stated the same as previous years: "Our consolidated financial statements are prepared in accordance with GAAP." The form further reported that on January 8, 2015, Caterpillar received a grand jury subpoena from the U.S. District Court for the Central District of Illinois. "The subpoena requests documents and information from the Company relating to, among other things, financial information concerning U.S. and non-U.S. Caterpillar subsidiaries (including undistributed profits of non-U.S. subsidiaries). The Company is cooperating with this investigation. The Company is unable to predict the outcome or reasonably estimate any potential loss; however, we currently believe that this matter will not have a material adverse effect on the Company's consolidated results of operations, financial position or liquidity." The form also stated, "Despite our belief that our tax return positions are consistent with applicable tax laws, we believe that taxing authorities could challenge certain positions." Caterpillar further reported: "On January 30, 2015, we received a Revenue Agent's Report (RAR) from the Internal Revenue Service (IRS) indicating the end of the field examination of our U.S. tax returns

for 2007 to 2009 including the impact of a loss carryback to 2005. The RAR proposed tax increases and penalties for these years of approximately $1 billion primarily related to two significant areas that we intend to vigorously contest through the IRS Appeals process.... Based on the information currently available, we do not anticipate a significant increase or decrease to our recognized tax benefits for these matters within the next 12 months. We currently believe the ultimate disposition of these matters will not have a material adverse effect on our consolidated financial position, liquidity or results of operations. We expect the IRS field examination of our U.S. tax returns for 2010 to 2012 to begin in 2015. In our non-U.S. jurisdictions, tax years are typically subject to examination for three to eight years."

**\*3**   • Statements from Richard D. Moore, then Caterpillar's Director of Investor Relations, at the J.P. Morgan Aviation Transportation and Industrials Conference on March 4, 2015. Moore fielded a question regarding Caterpillar's tax issues to which he responded: "... some of those referred to our CSARL subsidiary and there's been a lot of public information on this even including a Senate subcommittee hearing last April. And as we said then and still strongly believe, we completely follow the tax law and we pay our taxes. That's kind of the bottom line of it. But we've been cooperating with the IRS, and they completed their revenue agent report, and we are going to vigorously contest their conclusions on that for back taxes or penalties, however you want to define that." Moore also stated: "We believe that again our structures, our transactions, were in full accordance with the tax laws ... we haven't increased the reserves or tax rate expectations for that."

• May 1, 2015, Form 10-Q: "financial statements have been prepared in conformity with generally accepted accounting principles in the United States of America (U.S. GAAP) and pursuant to the rules and regulations of the Securities and Exchange Commission."

Société Générale alleges that the individual defendants, who are all current and former executives of Caterpillar, D. James Umpleby III, Douglas R. Oberhelman, Bradley M. Halverson, James B. Buda, and Jananne A. Copeland made the above alleged material misstatements by signing the forms filed with the SEC and Sarbanes-Oxley certifications.

1   This Court chose to set out the statements at issue in bullet points for clarity.

**Legal Standard**

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). When evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 555-56.

When a complaint alleges fraud, Federal Rule of Civil Procedure 9(b) requires the claim to be "stated with particularity," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(b). "Although states of mind may be pleaded generally [under Rule 9(b) ], the 'circumstances' must be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). In securities cases, plaintiffs "must provide enough information about the underlying facts to distinguish their claims from those of disgruntled investors" because not every instance of corporate financial deterioration indicates fraud. *Arazie v. Mullane*, 2 F.3d 1456, 1458 (7th Cir. 1993) (quoting in part *DiLeo*, 901 F.2d at 628).

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(b), further imposes "heightened pleading requirements" to discourage claims of "so-called 'fraud by hindsight.' " *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1155 (N.D. Ill. 2004) (quoting *In re Brightpoint, Inc. Sec. Litig.*, No. IP99–0870–C–H/G, 2001 WL 395752, at \*3 (S.D. Ind.

Mar. 29, 2001) ). Section 78u–4(b) "requires a court to dismiss a complaint that fails to (1) identify each of the allegedly material, misleading statements, (2) state facts that provide a basis for allegations made on information and belief, or (3) state with particularity 'facts giving rise to a strong inference that the defendant acted with the required state of mind.' " *Id.*

**Discussion**

*4 Defendants move for dismissal of both counts of the Amended Complaint. First, defendants argue that Société Générale fails to allege an actionable misstatement or omission of material fact and facts giving rise to a strong inference of scienter to support the claim under Section 10(b) of the Securities Exchange Act and Rule 5-b. Second, the claim for "control person" liability under Sec. 20(a) of the Securities Exchange Act, fails for lack of a primary violation of securities laws.

The statements that Société Générale identifies as the basis of its securities fraud claims can be divided into four categories:

(1) General statements that Caterpillar's consolidated financial statements are prepared in accordance with generally accepted accounting principles ("GAAP"). These statements appear in nearly identical form in Caterpillar's Form 10-K (2013-2017) and Form 10-Q for each quarter of 2013 and 2014.

(2) Statements disclosing the IRS examination of tax returns from 2007 to 2009 in Form 10-K (2013 and 2014) and Form 10-Q (each quarter of 2014). The forms further state: "In the opinion of management, the ultimate disposition of these matters will not have a material adverse effect on our consolidated financial position, liquidity or results of operations." In 2014, Caterpillar included the additional statement that this opinion included "the impact of a loss carry-back to 2005."

(3) Lagacy's testimony before the Senate Subcommittee and corresponding press release in advance of that testimony in which she referred to Caterpillar's legal compliance with tax laws, that CSARL is not a shell corporation, and that Caterpillar remains convinced that its restructuring complied with the tax code.

(4) Caterpillar's Form 10-K, 2015-2016 (all quarters) and 2017 (first quarter) disclosed the grand jury subpoena from January 8, 2015, stating: "The Company is cooperating with this investigation. The Company is unable to predict the outcome or reasonably estimate any potential loss; however, we currently believe that this matter will not have a material adverse effect on the Company's consolidated results of operations, financial position or liquidity." Caterpillar further states: "we believe that taxing authorities could challenge certain positions[,]" and reported that "[o]n January 30, 2015, we received a Revenue Agent's Report (RAR) from the Internal Revenue Service (IRS) indicating the end of the field examination of our U.S. tax returns for 2007 to 2009 including the impact of a loss carryback to 2005. The RAR proposed tax increases and penalties for these years of approximately $1 billion primarily related to two significant areas that we intend to vigorously contest through the IRS Appeals process.... Based on the information currently available, we do not anticipate a significant increase or decrease to our recognized tax benefits for these matters within the next 12 months. We currently believe the ultimate disposition of these matters will not have a material adverse effect on our consolidated financial position, liquidity or results of operations. We expect the IRS field examination of our U.S. tax returns for 2010 to 2012 to begin in 2015. In our non-U.S. jurisdictions, tax years are typically subject to examination for three to eight years."

*1. Misstatements or Omissions of Material Fact*
Defendants argue that these statements are not actionable for several reasons. First, the statements are opinions and not facts. Second, they are insulated from liability by the PSLRA safe harbor provision, 15 U.S.C. § 78u-5(c), because they are forward-looking statements accompanied by meaningful cautionary language. Third, the Amended Complaint fails to plausibly allege that the statements were false. The Court will address each in turn.

*5 Société Générale must allege a statement or omission that is false or misleading. *SEC v. Santos*, 355 F.Supp.2d 917, 920 (N.D. Ill. 2003). "[A] sincere statement of pure opinion is not an 'untrue statement of material fact,' regardless of whether an investor can ultimately prove the belief wrong." *Omnicare, Inc. v. Laborers Dist. Council Const. Industry Pension Fund*, 135 S.Ct. 1318, 1327 (2015). Whether a statement or omission is misleading "depends on the perspective of a reasonable investor." *Id.*

"[W]hether an omission makes an expression of opinion misleading always depends on context." *Id.* at 1330.

Here, Caterpillar's statements that it is complying with the law, cooperating with the government, and that the ultimate disposition of the tax issue will not have a materially adverse effect on Caterpillar's financial position are statements of opinion that are put in context by Caterpillar's accompanying disclosures regarding the ongoing IRS examination of tax records, the Grand Jury subpoena, and meaningfully cautionary language about Caterpillar's inability to predict the outcome. In this context, a reasonable investor is not likely to find the statements misleading unless they ignore those disclosures. What Société Générale is really asking is that Caterpillar be required to admit liability for uncharged, unadjudicated claims while the investigation into its tax position was ongoing. That sort of confession of guilt is not required. *See Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 906 (N.D. Ill.), *aff'd sub nom. Gallagher v. Abbott Labs.*, 269 F.3d 806 (7th Cir. 2001) ("SEC rules do not create a duty to confess contested charges."); *Ballan v. Wilfred American Edu. Corp.*, 720 F.Supp. 241, 249 (E.D.N.Y. 1989) ("[T]he SEC's proxy disclosure rules do not require a company's management to confess guilt to uncharged crimes, or 'to accuse itself of antisocial or illegal policies.' ... There is no reason why a different rule should apply under § 10(b).") (citations omitted).

The statements highlighted by Société Générale may be shielded by the safe harbor provision of the PLSRA if they are forward looking. A forward looking statement is not actionable if it is: (1) identified as a forward looking statement and is accompanied by meaningful cautionary language identifying factors that could cause actual results to materially differ from those in the forward-looking statement; (2) immaterial; or (3) the plaintiff fails to prove that the forward statement was made with actual knowledge of its falsity. 15 U.S.C. § 78u-5(c)(1). "The pleading implications of the safe harbor provision is to further ratchet up the scienter standard: the 'strong inference' that must be drawn to avoid dismissal cannot be an inference merely of recklessness' but must be of actual knowledge." *Brasher v. Broadwind Energy, Inc.*, No. 11 CV 991, 2012 WL 1357699, at *18 (N.D. Ill. Apr. 19, 2012) (quoting *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 705 (7th Cir. 2008) ) ("*Makor II*").

Here, Caterpillar argues that the statements cited by Société Générale are forward looking statements. This Court agrees. While the statements are made in the present tense they express belief about what may happen in the future. They contain the usual markers of projections. The statements relating to Caterpillar's belief about the outcome of the investigations and the disposition of the tax dispute express what Caterpillar "believes" about their tax position and its implications in the future. Further, those statements are all accompanied by meaningful cautionary language.

**\*6** "Language is meaningful and cautionary if it puts an investor 'on notice of the danger of the investment to make an intelligent decision about it according to her own preferences for risk and reward.' " *Stavros v. Exelon Corp.*, 266 F.Supp.2d 833, 843 (N.D. Ill. 2003) (quoting *Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999) ). "To insulate a defendant from liability under the safe harbor, cautionary language must be 'sufficiently related in subject matter and strong in tone to counter the statement made.' " *In re Midway Games, Inc. Sec. Litig.*, 332 F.Supp.2d 1152, 1166 (N.D. Ill. 2004) (quoting *In re Boston Tech. Inc. Sec. Litig.*, 8 F.Supp.2d 43, 53 (D. Mass. 1998) ). The cautionary language here is not generic or boilerplate but refers specifically to the investigation and tax position relating to CSARL. Not only does Caterpillar disclose that there are ongoing investigations into their tax position, but Caterpillar repeatedly states that it believes there has not been any wrongdoing but there may be adverse effects and they may incur additional tax expenses. Thus, this Court finds those statements are non-actionable under the safe harbor.

Even if the safe harbor does not apply to all the statements highlighted by Société Générale, the claims would still fail. The amended complaint does not plausibly allege that any of those statements were false and were known to be false when made. *See Stavros*, 266 F.Supp.2d at 847. Citing the grand jury subpoena and execution of search warrants, Société Générale essentially argues that Caterpillar should have admitted a securities or tax law violation while the investigations were ongoing and the failure to do so was both a material omission and a misstatement. This Court finds such a position untenable. If every investigation or executed search warrant was evidence of wrongdoing then what purpose do hearings and trials have. As previously stated, securities laws generally do not impose such a duty upon publicly traded corporations to confess to

uncharged, unadjudicated claims of wrongdoing. *See Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 906 (N.D. Ill.), *aff'd sub nom. Gallagher v. Abbott Labs.*, 269 F.3d 806 (7th Cir. 2001) ("SEC rules do not create a duty to confess contested charges."); *see also Mogell v. Calhoun*, No. 15 CV 1239, 2016 WL 3369233, at *5 (C.D. Ill. Mar. 15, 2016) (Mihm, J.) (finding that the plaintiff failed to show further disclosures were required by Caterpillar's Board of Directors).

Société Générale further claims that Caterpillar's statements, regarding its compliance with the tax laws and its cooperation with the investigation, were false based on a report from an accounting professor, Dr. Robinson, that was prepared for the Senate Subcommittee hearings and was excerpted in the New York Times on March 7, 2017. Société Générale also points to a Wall Street Journal ("WSJ") article from July 3, 2017. Newspaper and media may be credible sources bolstering plaintiff's claim, "if the newspaper article includes numerous factual particulars and is based on an independent investigative effort[.]" *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000). The articles on which Société Générale relies do not support an inference that Caterpillar's statements regarding its tax position were false, especially where Caterpillar qualified those statements by acknowledging that it could not predict the outcome. The excerpts from Dr. Robinson's report are stated as opinion, "I believe that the company's noncompliance with these rules was deliberate and primarily with the intention of a higher share price." Similarly, the WSJ reported, "[f]ederal investigators believe Caterpillar, Inc. failed to submit numerous required export findings with the government in recent years." Neither these reports nor the retirement or resignation of two senior executives suggests that Caterpillar did not believe that it complied with tax laws and was cooperating with the investigation.

*2. Scienter*

*7 Even if Société Générale had sufficiently alleged false statements or omissions, the allegations supporting scienter fall short. To maintain a claim for securities fraud, Société Générale must also allege with particularity facts giving rise to a strong inference that Caterpillar acted with the required state of mind. "For a case under section 10(b), that state of mind is 'intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false.' " *Pension Tr. Fund for Operating Engineers v. Kohl's Corp.*, 895 F.3d 933, 936 (7th Cir. 2018) (quoting *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007) ).[2] This means that a complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 127 S. Ct. 2499, 2510, 168 L.Ed. 2d 179 (2007). When applying this standard, "the court must take into account plausible opposing inferences." *Id.*

| 2 | The Court granted defendants' unopposed motion for leave to file supplemental authority and considered the Seventh Circuit's recent pronouncement in *Pension Tr. Fund for Operating Engineers v. Kohl's Corp.*, 895 F.3d 933, 936 (7th Cir. 2018). The Court also granted plaintiff's motion for leave to file supplemental authority. |

Société Générale alleges several sources of facts supporting scienter, including Dr. Robinson's Report, Caterpillar's alleged failure to cooperate with the investigation, and the departure of certain individual defendants from Caterpillar. Société Générale further asserts that the following support a strong inference of scienter: the 2009 whistleblower lawsuit, that Caterpillar made numerous statements regarding its tax strategies, and its cooperation with the government investigation. Additionally, Société Générale argues that scienter can be inferred under a "core operations" theory and from the senior positions of the individual defendants and their failure to comply with Caterpillar's Code of Conduct or GAAP. This Court is unpersuaded.

Société Générale does not explain how these allegations some of which are conclusory shed light on Caterpillar's state of mind during the class period. Dr. Robinson's Report was not provided to Caterpillar until after the New York Times published its article and, as noted above, expresses only Dr. Robinson's belief about Caterpillar's activities. Société Générale's assertion that Caterpillar did not cooperate with the investigations is based on the issuance of search warrants and not on any factual allegations of Caterpillar's level of cooperation. Moreover, the standard for probable cause governing search warrants is significantly lower than the more-likely-than-not threshold for scienter. *See Higginbotham*, 495 F.3d at 757 ("No decision of which we are aware concludes that anonymous accusers can demonstrate scienter is 'at

least as [likely] as any opposing inference one could draw from the facts alleged.' "). It must be noted that Caterpillar disclosed in its public reports that the IRS was examining its tax records, that it was subjected to a grand jury subpoena. These sorts of disclosures belie Société Générale's assertion that Caterpillar was attempting to conceal or deceive its investors.

The 2009 lawsuit was an employment discrimination suit claiming retaliation by a former employee for raising concerns over the CSARL tax position that settled and was never adjudicated on the merits. Caterpillar contested that case as it has the IRS investigation. That Caterpillar consistently maintained its belief that it complied with tax laws, cooperated with the government, determined to appeal any adverse findings is not undermined by any or all of the allegations. Caterpillar did not present an overly sunny outlook, but specifically disclosed the investigations. Indeed, Caterpillar's continued statements that it continued to belief its tax position complied with the law, the company specifically tempered those statements with ones acknowledging that the taxing authorities could challenge their position and that the ultimate outcome is not predictable. These facts suggest that it was at least as likely that Caterpillar believed its advisors and accountants that their position complied with the law. This position was perhaps negligent but Société Générale has not supplied sufficient facts to demonstrate that it was fraudulent or even reckless. "Perhaps the executives had a motive to pretend nothing was amiss (though even that does not seem beyond dispute, as they might equally have wanted the most accurate financial picture possible), but a generalized motive common to all corporate executives is not enough to establish *scienter*." *Kohl's*, 895 F.3d 939-40. Further, there is no meaningful dispute that significant time has passed since the agencies completed their investigations and no charges have been filed.

*8 Allegations such as individual stock sales are insufficient to show scienter without specific facts demonstrating whether the sales represented a significant portion of any individual's holdings or they sold more than they typically would. *See Kohl's*, 895 F.3d 940. Further, "allegations of GAAP violations, standing alone, are insufficient to raise an inference of scienter." *Stavros*, 266 F.Supp.2d at 850. The individual defendants' senior positions within Caterpillar also do not suggest scienter without additional support from internal documents or communications. *Compare Selbst v. McDonald's Corp.*, 432 F. Supp. 2d 777, 787 (N.D. Ill. 2006), *and Chu v. Sabratek Corp.,* 100 F.Supp.2d 827, 837 (N.D. Ill. 2000) ("pleading scienter based exclusively on a defendant's corporate position is insufficient to survive a motion to dismiss."), *with In re Sears, Roebuck & Co. Sec. Litig.*, 291 F. Supp. 2d 722, 727 (N.D. Ill. 2003) (allegations of scienter based on officers' position in the company were bolstered by the statements in the complaint about the numerous statements made by various defendants about the credit portfolio and about its effect on Sears' profit).

Lastly, Société Générale asserts a "core operations" theory urging the Court to infer scienter because of the significance of the CSARL tax position to Caterpillar's core operations. In other words, the individual defendants would have known of the CSARL tax position because it was of such importance in the financial structure of the company. Following the Seventh Circuit's Opinions in *Kohl's* and *Tellabs*, it appears that an inference of scienter based on a "core operations" theory is viable in this Circuit. However, even assuming each individual defendant here was aware of Caterpillar's tax position regarding CSARL, it does not necessarily follow that they disbelieved their statements or sought to deceive investors with their statements. Accordingly, this Court finds that Société Générale has failed to state a claim for securities fraud.

*3. "Control Person Liability"*
Under Section 20(a) of the Securities Exchange Act, Société Générale must allege (1) a primary violation of securities law; (2) that each individual defendant exercised general control over the primary violator's operations; and (3) that each individual defendant "possessed the power or ability to control the specific transaction or activity which the primary violation was predicated, whether or not that power was exercised." *DH2, Inc. v. Athanassiades*, 359 F. Supp. 2d 708, 719–20 (N.D. Ill. 2005) (citing *Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 881 (7th Cir. 1992) ). Because this Court has found no primary violation of securities laws, Société Générale cannot state a claim for control person liability under Section 20(a).

**Conclusion**
Defendants' motion to dismiss [34] is granted and the Amended Complaint is dismissed without prejudice.

**Société Générale Securities Services, GbmH v. Caterpillar, Inc., Slip Copy (2018)**
2018 WL 4616356

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2018 WL 4616356

End of Document © 2018 Thomson Reuters. No claim to original U.S. Government Works.